THE STATE, EX REL. BROWN, APPELLANT, *v.* ROCKSIDE RECLAMATION, INC., APPELLEE.

(No. 33337—Decided September 11, 1975.)

Mr. *William J. Brown*, attorney general, and *Mr. Robert L. Brubaker*, for appellant.

Mr. *Jerome Ellerin* and Mr. *Robert R. Disbro*, for appellee.

KRENZLER, P. J. The defendant-appellee, Rockside Reclamation, Inc., hereinafter referred to interchangeably as Rockside or appellee, is the operator of a solid waste disposal facility licensed under R. C. Chapter 3734. The disposal site is located in the city of Garfield Heights, Ohio. To the north and east of the site and located in Garfield Heights are single family residences. Southwest of the landfill is the village of Valley View. The city of Garfield Heights and the disposal facility are elevated above Valley View so that the flow of surface and waste water runs in a west-southwest direction from Garfield Heights through the landfill and into Valley View and discharges into the Ohio Canal, the Cuyahoga River and Lake Erie.

The plaintiff-appellant, the attorney general of the state of Ohio, hereinafter referred to interchangeably as the attorney general or appellant, instituted an action on behalf of the state of Ohio, its citizens and inhabitants against Rockside. In effect the lawsuit alleged that the Rockside sanitary land fill was being operated as a nuisance in violation of R. C. 3767.13, R. C. 3767.20, R. C. 3767.32 and R. C. 6111.04. It is noted that the attorney general did

not bring this action on behalf of the environmental protection agency[1] of the state of Ohio or on behalf of the board of health; nor was the environmental protection agency or board of health joined in this action and they are not parties to this appeal. Further, neither the environmental protection agency nor the board of health has initiated any administrative proceedings in regard to alleged violations of R. C. 3734.01 to R. C. 3734.11, nor has any action been taken to revoke or suspend the appellee's permit.

A summary of the allegations contained in the appellant's five count amended complaint are as follows.

In count 1 the appellant alleged that Rockside operated a solid waste dump in the city of Garfield Heights and that the operation consisted of the receipt of large quantities of raw garbage; that residences in the area obtained their water for household needs from wells, which were serviced by underground watercourses; that during the month of September, 1972, Rockside and its agents by means of excavating equipment unlawfully severed, exposed and diverted the underground watercourses, thereby depleting the sources for said wells and depriving the owners of the use of them in violation of R. C. 3767.13. The appellant contended that this was a public nuisance and sought an order requiring Rockside to restore said watercourses to their natural state.[2]

In count 2 the appellant alleged that Rockside's dump operated over channels of a number of watercourses or streams which flow in a westerly direction to and through the village of Valley View and empty into the waters of the state, being tributaries of the Cuyahoga River and Lake Erie; that in the normal course of Rockside's operation storm water runs over and through the dump and into the waters of the state, namely, tributaries of the Cuyahoga River and Lake Erie. The appellant contended that

[1] The environmental protection agency may hereinafter be referred to as EPA.

[2] This count was withdrawn by appellant and is not an issue in this appeal.

substances introduced into the waters of the state rendered that water noxious, toxic, odorous, noisome, harmful and inimical to animal and aquatic life, and to the use of such waters for domestic water supply, for industrial or agricultural purposes or for recreation, and rendered them hazardous to public health, safety and welfare. The appellant contended that the presence of these substances in the waters of the state had damaged the state. Further, the appellant contended that the appellee had no permit allowing it to discharge such wastes into the waters of the state from the Ohio Environmental Protection Agency pursuant to R. C. 6111.04, and that it had not applied for a permit. The appellant contended that the act of the appellee allowing the pollutants to unlawfully enter the waters of the state constituted a public nuisance in violation of R. C. 3767.13, R. C. 3767.32 and R. C. 6111.04.

In his third count, the attorney general contended that Rockside's dump was operated in such a manner as to give off a continuous stream of noxious odors offensive and injurious to the inhabitants of Valley View and Garfield Heights and that this constituted a violation of R. C. 3767.13. The appellant sought an order that Rockside was maintaining a public nuisance in violation of R. C. 3767.13 and sought to enjoin it from continuing such nuisance.

In count 4 of the amended complaint the appellant stated in summary that Rockside's land fill was illegally operated on land zoned for single family use and that it had not applied for, nor had it been granted, a variance or rezoning of said property. Further, the appellant, contended that this illegal use violated R. C. 3767.20 and sought an injunction against Rockside using the subject property as a sanitary land fill until the land was appropriately rezoned.

In count 5 the appellant alleged that Rockside was using shale and shale related material as cover material in violation of regulation HE-24-09(f) of the solid waste disposal regulations and that this material caused water pollution and air pollution.

In its answer the appellee Rockside contended that:

(1) the trial court did not have jurisdiction to hear the matter; (2) appellant failed to exhaust his administrative remedies prior to filing the action; (3) the attorney general of Ohio did not have authority to maintain this action; and (4) the appellee denied that it was required to be licensed under R. C. 6111.04 because it was already licensed under R. C. Chapter 3734; denied that it operated its solid waste disposal facility in violation of R. C. 3767.13, R. C. 3767.20, R. C. 3767.32 and R. C. 6111.04; and denied that the operation of its licensed sanitary land fill was a nuisance in violation of the foregoing sections. The balance of Rockside's answer constituted a general denial.

In summary, the principal issues raised by the parties in the pleadings are as follows. The appellant alleged that Rockside was polluting the waters of the state and was maintaining a public nuisance in violation of R. C. 3767.13, R. C. 3767.20, R. C. 3767.32 and R. C. 6111.04 and requested that Rockside be preliminarily and permanently enjoined from continuing to pollute the air and waters and from maintaining a public nuisance. The attorney general also sought recovery of costs, reasonable attorney fees, $5,000 in compensatory damages and $10,000 in punitive damages.

In summary, Rockside alleged that the trial court did not have jurisdiction to hear the case because the appellant failed to exhaust his administrative remedies. Further, Rockside maintained that the attorney general was not a proper party to bring actions under R. C. Chapter 3767, the general nuisance chapter. The appellee also claimed that it was not subject to violations of R. C. Chapter 3767, because it was a licensed solid waste disposal operator under R. C. Chapter 3734. Lastly, the appellant denied that its sanitary land fill operation was a general nuisance in violation of R. C. 3767.13, R. C. 3767.20, R. C. 3767.32 and R. C. 6111.04.

After the case was set for trial the appellee filed a motion for summary judgment. The motion for summary judgment was dismissed because it was filed after the case had been set for trial and the appellant had not given his consent as required by Civil Rule 56.

This case was tried to the court without a jury. The court heard testimony comprising some 1770 pages and wrote a lengthy opinion.

The trial court found that the entire area involved in this case, including the land in Garfield Heights, the sanitary land fill and the land in Valley View, does not have individual enclosed storm and sanitary sewerage systems which flow into a treatment plant. The storm and sanitary effluents flow from septic tanks through open ditches into the Cuyahoga River, Ohio Canal and Lake Erie.

The trial court found that some of the sewers, both sanitary and storm from Garfield Heights empty directly into the appellee's land fill and that these effluents together with the water from the land fill run in a west-southwest direction to the village of Valley View; that in Valley View the people dispose of sewage with septic tanks; that drainage from the septic tanks runs into open ditches in front of their properties and that some of the pollution in Valley View comes from the effluents from the septic tanks. The court found that all of the drainage from Garfield Heights, the solid waste disposal site and Valley View was toward the Ohio Canal, the Cuyahoga River and Lake Erie.

The trial court found that the appellee's license was still in full force and effect, and that no action had been taken by the board of health to suspend or revoke the license for violation of R. C. 3734.01 to R. C. 3734.11, and also that no written order stating specific findings for suspension or revocation of its license had been sent to the licensee. Further, the court found that there had been no investigation by the board of health or the director of environmental protection conducted upon the complaint of any person or upon their own initiative.

The court found that there was no proof of the violation of any order, directive or rule issued against the appellee by the director of environmental protection under R. C. Chapter 3734, or R. C. Chapter 6111.

The trial court concluded as follows: (1) there can be no violation of the chapter on solid waste disposal for

which an injunction can be sought by the attorney general until an investigation and hearing is had and the appellee's license revoked; (2) R. C. Chapter 3767, dealing with nuisances and particularly the provisions of R. C. 3767.13, R. C. 3767.20 and R. C. 3767.32 are not applicable to licensed solid waste disposal site so long as the license issued is in full force and effect because the legislature made an exception to the nuisance statutes in the case of licensed solid waste disposal sites. In other words, the trial court held that a licensed sanitary solid waste land fill operator is exempt from the nuisance provision of R. C. Chapter 3767; (3) in order for the attorney general to bring an action seeking to enjoin a licensed solid waste disposal operation the director of the environmental protection agency must request the attorney general to file such action prior to the action being filed. The court held that the issuance of a letter subsequent to the filing of a complaint in court does not comply with the requirements of R. C. 3734.10.[3] The court stated that a person complaining of violations of the regulations or statutes involving licensed solid waste disposal sites must file a complaint and then exhaust administrative remedies before filing an appeal in court.

The trial court also found that the water and drainage over and through the defendant-appellee's disposal site runs into open sewers in Valley View and therefore is excepted from the operation and coverage of the chap-

---

[3]The attorney general contends that the director of environmental protection did issue a letter to him authorizing the maintenance of this action against the appellee in the Common Pleas Court of Cuyahoga County and that such letter constitutes the complaint referred to in R. C. 3734.10. We have reviewed the record and the transcript of testimony and exhibits and there is no evidence that the board of health or the director of the environmental protection agency issued any order to the appellee stating a violation of any regulation or statute under Chapter 3734; nor is there any evidence that a complaint was made by the board of health or the director to the attorney general alleging violation of any of the sections of R. C. Chapter 3734, and requesting that the attorney general initiate appropriate legal proceedings by way of prosecution or injunction.

ter on water pollution because R. C. 6111.04(D) provides that the discharge of sewage, industrial waste or other wastes into a sewerage system maintained by the state of Ohio or a political subdivision is exempt from the provisions of R. C. 6111.04, which prohibits pollution of any waters of the state. The court stated that this exception applied because the appellee's waste water ran into a "sewerage system" as defined in R. C. 6111.01(E).

The trial court then denied the relief sought in each of the five counts and rendered final judgment in favor of the appellee.

The trial court did not make findings or decide whether the appellee was polluting the air in violation of R. C. Chapter 3704, polluting the water in violation of R. C. Chapter 6111, violating any of the provisions of the solid waste disposal act, R. C. Chapter 3734, or whether the appellee's operation of its solid waste disposal facility constituted a nuisance or a health hazard. Consequently, the trial court disposed of the case on a jurisdictional basis and did not decide the case on its merits.

The appellant has taken this appeal and has four assignments of error.

I. The Court of Common Pleas erred in holding that it had no jurisdiction to issue an injunction against the holder of a solid waste license with respect to violations of the solid waste act and the regulations promulgated thereunder.

II. The Court of Common Pleas erred in holding that the Ohio Attorney General was not properly authorized to prosecute the defendant for violations of the solid waste act.

III. The Court of Common Pleas erred in holding that the public nuisance act does not apply to the operation of a licensed solid waste disposal site.

IV. The Court of Common Pleas erred in holding that the leachate flowing from defendant's disposal site into the waters of the state constituted a discharge into a sewerage system maintained by the state or a political subdivision.

These assignments of error raise the following issues:

(1) May the attorney general of the state of Ohio on behalf of all of its citizens and inhabitants, or may any other person maintain an action under the nuisance provisions of R. C. 3767.13 and R. C. 3767.32 against a sanitary land fill operator who is licensed under the provisions of R. C. Chapter 3734, or are the administrative and appeal provisions of R. C. Chapter 3745, and the suspension, revocation, prosecution and injunction provisions of R. C. 3734.09 and R. C. 3734.10 the exclusive remedy for dealing with alleged violations of the air pollution laws, water pollution laws, and solid waste disposal laws by a licensee of a solid waste disposal facility or site?

(2) If R. C. Chapter 3734 provides the exclusive remedy to prosecute and enjoin a licensed solid waste disposal operator for alleged violations of the foregoing environmental laws, does R. C. 3734.10 give the attorney general the independent power and authority to prosecute or seek an injunction against such alleged violations or must there first be an order from the director of the environmental protection agency finding a violation of law or of the regulations and then a complaint by him to the attorney general that the attorney general prosecute or enjoin the alleged violator?

(3) Is the operator of a solid waste disposal facility licensed under R. C. Chapter 3734 exempt from the prohibition against polluting the waters of the state as provided for in R. C. 6111.04, and also exempt from the requirements of R. C. 6111.04 that any person may not pollute the waters of the state without first obtaining a permit from the director of the EPA?

(4) If effluents from septic tanks and other waste waters that are polluted pass over and under the ground and through pipes and conduits and open sewers and ditches and then are disposed of into the waters of the state, are such polluted waters part of a "sewerage system" as defined in R. C. 6111.01(E) and thus exempt from the prohibition against pollution provided for in R. C. 6111.04?

In this case we are dealing with the general subject

of environmental law and in particular the laws dealing with the environmental protection agency, R. C. Chapter 3745, solid waste disposal, R. C. Chapter 3734, water pollution control, R. C. Chapter 6111, air pollution control, R. C. Chapter 3704, and nuisances, R. C. Chapter 3767.

Environmental pollution has been with us from the earliest of modern times but it is only as a result of this century's rapid technological expansion and accelerated population growth that the issue of pollution has assumed a pre-eminent place among the problems facing the public and all levels of government. More importantly, it is indeed only within the past few years that legislators have realized that if left unabated, pollution will, within the recognizable future, destroy man's environment and place in jeopardy his continued existence upon the earth. In 1972 only ten percent of the entire United States' watershed was considered to be unpolluted.[4] Lake Erie, which in the past had produced millions of pounds of sturgeon and whitefish, was on its way to becoming an irrevocable algae swamp.

Now state governments, Ohio being among them, have acknowledged the long range consequences of permitting the uncontrolled and unfettered pollution of their water, soil and air and they have passed legislation designed to regulate heretofore unbridled technology and wastefulness. Relevant laws on these subjects are contained in four chapters of the Ohio Revised Code: (1) Chapter 3745, Environmental Protection Agency; (2) Chapter 3734, Solid Waste Disposal; (3) Chapter 6111, Water Pollution Control; (4) Chapter 3704, Air Pollution Control. A fifth chapter, Chapter 3767, deals with general nuisances.

(1) The Ohio legislature recently enacted R. C. Chapter 3745, which created the environmental protection agency. Chapter 3745, became effective on October 23, 1972. This agency, headed by a director of environmental protection, hereinafter referred to as director, administers the

[4]*Legislative Responses to Air & Water Pollution*, 33 Ohio St. L. J. 860, 863 (1972).

laws and regulations pertaining to the prevention, control and abatement of air and water pollution, public water supply, and the disposal and treatment of solid and other wastes.[5] R. C. 3745.01.

It was the legislature's intent in creating the EPA to put into execution a long term comprehensive plan and program to conserve, protect and enhance the air, water and other natural resources of the state; prevent and abate pollution of the environment for the protection and preservation of the health, safety, welfare and property of the people of the state; administer the air, water and other natural resources of the state for the use and benefit of the people of the state; and provide for enforcement of the right of the people to environmental quality consistent with human health and welfare, R. C. 3745.011(A), (B), (C), and (F).

Any officer of an agency of the state or of a political subdivision, acting in his representative capacity, or any other person aggrieved or adversely affected by an alleged violation may file a verified complaint in writing with the director of EPA alleging that another person is violating or threatens to violate any law, rule or standard, or any order relating to air pollution, water pollution or solid waste disposal, or if the person is in possession of a valid license, permit or variance relating to air pollution, water pollution or solid waste disposal that the person is violating or threatens to violate the conditions of such license, permit or variance. R. C. 3745.08.

Upon recceipt of the complaint, the director shall cause a prompt, thorough investigation to be conducted. If upon completion of the investigation there is not probable cause to believe that a violation has occurred or will occur, the director shall by order dismiss the complaint. If there is probable cause to believe that a violation has occurred or will occur, the director shall cause a copy of the complaint to be served upon the alleged violator, conduct a

[5]Many sections in R. C. Chapters 3704, 3734, and 6111, were amended in 1972 to relate to and be consistent with Chapter 3745.

hearing and enter such order as may be necesssary or he shall request the attorney general to commence appropriate legal proceedings. R. C. 3745.08. At any time prior to the hearing, any person aggrieved or adversely affected by the violation or threatened violation complained of, may intervene as a party to the hearing by filing a complaint. If more than one complaint has been filed with respect to a single alleged violation, all complaints shall be consolidated and not more than one hearing shall be held by the director with respect to each alleged violation. R. C. 3745.08.

Twenty days prior to any hearing to be conducted by the director he shall cause publication of said hearing in a newspaper of general circulation in the county wherein the violation is alleged to have occcurred or that have been threatened to occur and shall mail notice to all persons, subscribing for notification under R. C. 3745.07. R. C. 3745.08.

Before the director of EPA may issue, deny, modify, revoke or renew any permit, license or variance pursuant to R. C. Chapter 3704, air pollution control, R. C. Chapter 3734, solid waste disposal, or R. C. Chapter 6111, water pollution control, he shall mail a notice to each person on his required mailing list of his proposed action and of any complaints or hearings to be held. R. C. 3745.07. If the director receives a written objection to a proposed action within 30 days of the date of issuance of the proposed action from an officer of an agency of the state or of a political subdivision or any person who would be aggrieved or adversely affected by the issuance or renewal of a permit, license or variance, he shall conduct an adjudication hearing on the proposed action in accordance with R. C. 119.09 and R. C. 119.10, at which hearings such persons who submit objections shall be parties. R. C. 3745.07.

If the director issues, denies, modifies, revokes or renews a permit, license or variance without issuing a proposed action an officer of an agency of the state or of a political subdivision acting in a representative capacity, or

any person who would be aggrieved or adversely affected thereby may appeal to the environmental board of review, R. C. 3745.07:

Further, the legislature created an environmental board of review, hereinafter referred to as the board, consisting of three members to hear appeals from decisions of the director of EPA. R. C. 3745.02. Any person who was a party to a proceeding before the director may participate in an appeal to the board for an order vacating or modifying the action of the director of the EPA, or local board of health, or ordering the director or board of health to perform an act. R. C. 3745.04. The appeal shall be filed in writing with the board within 30 days after notice of the action and a hearing shall be held within 30 days after the notice of appeal is filed. R. C. 3745.04. The filing of an appeal does not automatically suspend or stay execution of the action appealed from. R. C. 3745.04. However, upon application by the appellant the board may suspend or stay such execution pending immediate determination of the appeal. R. C. 3745.04.

In hearing the appeal, if there was an adjudication hearing before the director and a record taken under R. C. 119.09 and R. C. 119.10 the board is confined to that record as certified to it by the director. However, the board may grant a request for the admission of additional evidence. If there was no adjudication hearing by the director under R. C. 119.09 and R. C. 119.10, the board will conduct a hearing de novo on the appeal. R. C. 3745.05.

If upon completion of the hearing the board finds that the action appealed from was lawful and reasonable, it shall affirm the action by written order. If it finds that the action was unreasonable or unlawful, it shall vacate or modify the action appealed from by written order. R. C. 3745.05.

Any party adversely affected by an order of the board may appeal to the court of appeals of Franklin County or, if the appeal arises from an alleged violation of a law or regulation, to the court of appeals of the district in which the violation was alleged to have occurred. The filing of

this notice of appeal shall not automatically operate as a suspension of the order of the board. R. C. 3745.06. Hearings on these appeals shall be given preference over all other civil proceedings. The court shall affirm the order complained of in the appeal if it finds that the order is supported by reliable, probative and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate or modify the order or make such ruling as is supported by reliable, probative and substantial evidence and is in accordance with law. R. C. 3745.06.

(2) Under R. C. Chapter 3734, dealing with the licensing of solid waste disposal facilities, the director shall adopt regulations in regard to the inspection and issuance of such licenses and he must assure that all such facilities and sites will be located, maintained and operated in a sanitary manner so as not to create a nuisance, cause or contribute to water pollution or create a health hazard. R. C. 3734.02.

The board of health in each district shall provide for the inspection, licensing and enforcement of sanitary standards for solid waste disposal facilities in conformity with the rules and regulations promulgated by the director of the EPA. R. C. 3734.04.

Further, no person shall operate a solid waste disposal site or facility without a license issued by the board of health of the health district in which such site or facility is located. R. C. 3734.05(A).

Licenses to operate solid waste disposal facilities are valid for one year and are renewable by the board of health of the health district in which the site or facility is located. Transfer of an existing license to another person requires approval of both the board of health and the director. R. C. 3734.05(B).

Upon a written complaint by any person the board of health or the director of EPA shall conduct such investigations and make such inquiries as are necessary to secure compliance with R. C. Chapter 3734, or the regulations adopted thereunder. R. C. 3734.10. Also the director

or any board of health may upon complaint or upon their initiative investigate or make inquires into any alleged violation or act of improper solid waste disposal. R. C. 3734.10.

The board of health of a health district in which a solid waste disposal facility or site is located may suspend, revoke or deny a license for violations of R. C. 3734.01 to R. C. 3734.11. R. C. 3734.09. Unless there is an immediate serious public health hazard, no suspension, revocation or denial of a license shall be effective until the operator of the facility has been given notice in writing of the specific violations and a reasonable time to make corrections. No license shall be suspended, revoked or denied without a written order stating the findings upon which suspension, revocation or denial is based, and the copy of the order shall be sent to the applicant or licensee by certified mail. R. C. 3734.09.

Appeal from any suspension, revocation or denial of a license shall be made in accordance with R. C. 3745.02 to R. C. 3745.06. R. C. 3734.09 as stated above.

The attorney general or the prosecuting attorney of the county or the solicitor of the city where a violation occurs, upon complaint of the respective board of health of the health district or the director of EPA shall prosecute to termination or bring an action for injunction against any person violating R. C. 3734.01 to R. C. 3734.11. R. C. 3734.-10.

The common pleas court in which an action for an injunction is filed has jurisdiction to grant injunctive relief upon a showing that the respondent named in the petition is operating a solid waste disposal site or facility in violation of R. C. 3734.01 to R. C. 3734.11. R. C. 3734.10.

Therefore, if the board of health or the director of EPA determines that there is an immediate serious public health hazard, either one may request the attorney general, prosecuting attorney or city solicitor to bring an injunction action against any person violating R. C. 3734.01 to R. C. 3734.11. The common pleas court may then grant injunctive relief upon a showing that the person named in

the petition is operating such solid waste disposal facility in violation of R. C. 3734.01 to R. C. 3734.11, and that there is an immediate serious public health hazard. R. C. 3734.09.

If there is no immediate serious public health hazard, the license may not be suspended, revoked or denied unless notice in writing is given to the operator of the facility of the specific violations and a reasonable time is given to make the corrections. Also, there must be a written order stating the findings upon which the suspension, revocation or denial is based. The operator also has an opportunity to take an appeal in accordance with R. C. 3745.02 through R. C. 3745.06.

It is noted that R. C. 3734.99 provides penalities in the form of fines not to exceed $100 per day for violations of R. C. 3734.01 to R. C. 3734.11.

(3) We will next turn our attention to the law of water pollution which is contained in R. C. Chapter 6111, entitled "Water Pollution Control." Pollution means the placing of any sewage, industrial waste or other waste in any waters of the state, R. C. 6111.01(A). Waters of the state means all streams, lakes, ponds, marshes, watercourses, waterways, irrigation systems, drainage systems, and all other bodies or accumulations of water, surface and underground, natural or artificial, which are situated wholly or partly within or border upon the state, except private waters which do not combine or effect a junction with natural surface or underground waters. R. C. 6111.01(H).

The director of environmental protection, when dealing with water pollution, has the authority to issue, modify or revoke orders to prevent, control or abate water pollution, prohibiting or abating discharges of sewage, industrial waste or other wastes into the waters of the state, R. C. 6111.03(H), to issue, revoke, modify or deny permits for the discharge of sewage, industrial waste or other waste into the waters of the state, R. C. 6111.03(J), to institute or cause to be instituted in any court of competent jurisdiction proceedings to compel compliance with R. C. 6111.01 to R. C. 6111.08, R. C. 6111.03(L) and to exercise

all incidental powers necessary to carry out the purposes of R. C. 6111.01 to R. C. 6111.08. R. C. 6111.03(P).

Under the Ohio Water Pollution Control Act no person shall cause pollution or place or cause to be placed any sewage, industrial waste, or other wastes in a location where they cause pollution of any waters of the state, and any such action is declared to be a public nuisance, except in cases where the director has issued a valid and unexpired permit or renewal thereof, as provided in R. C. 6111.01 to R. C. 6111.08. R. C. 6111.04. Further, no person to whom a permit has been issued shall place or discharge, or cause to be placed or discharged in any waters of the state, any sewage, industrial waste, or other wastes in excess of the permissive discharges specified under such permit without first receiving a permit from the director to do so. R. C. 6111.04. In addition, no person who is discharging or causing the discharge of any sewage, industrial waste or other waste into the waters of the state shall continue or cause the continuance of such discharge without first obtaining a permit therefor issued by the director. R. C. 6111.04.

It is noted that there are several exceptions to the application of R. C. 6111.04 in that this section does not apply to the discharge of sewage, industrial waste, or other wastes into a sewerage system maintained by the state or a political subdivision. R. C. 6111.04(E). A "sewerage system" is defined as pipe lines or conduits, pumping stations and force mains, and all other constructions, devices, appurtenances and facilities used for collecting or conducting water-borne sewage, industrial waste, or other wastes to a point of disposal or treatment. R. C. 6111.01 (E).

"Treatment works" means any plant, disposal field, lagoon, dam, pumping station, incinerator or other works used for the purpose of treating, stabilizing or holding sewage, industrial waste, or other wastes. R. C. 6111.01(F). "A disposal system" means a system for disposing of sewage, industrial waste or other wastes and includes sewerage systems and treatment works. R. C. 6111.01(G).

As to alleged acts of pollution, the director may on his own intiative investigate or make inquiries into any alleged act of pollution or failure to comply with R. C. 6111.01 to R. C. 6111.08, or any order, regulation, the terms and conditions of a permit, or other determination pursuant thereto. In addition, upon written complaint by any person, the director shall conduct such investigation and make such inquiries as are required. R. C. 6111.05.

All proceedings of the director under R. C. 6111.01 to R. C. 6111.08 are subject to and governed by R. C. 119.01 to R. C. 119.13 and R. C. Chapter 3745, as hereinbefore discussed. R. C. 6111.06(A).

The director shall not refuse to issue a permit, nor modify or revoke a permit already issued unless the applicant or permit holder has been afforded an opportunity for a hearing prior to the refusal to issue the permit or prior to the modification or revocation of the permit. R. C. 6111.06 (B).

But if the director officially determines that an emergency exists requiring immediate action to protect the public health or welfare, he may without notice or hearing issue an order reciting the existence of the emergency and require that such action be taken as is necesssary to meet the emergency, and such order shall be effective immediately. R. C. 6111.06(C). Any person to whom such emergency order is directed shall comply immediately but on application to the director shall be afforded a hearing as soon as possible and not later than 20 days after such application. On the basis of such hearing, the director shall continue such order in effect, revoke it or modify it and no such emergency order shall remain in effect for more than 60 days after its issuance. R. C. 6111.06(C).

The Water Pollution Control Act requires that no person shall violate or fail to perform any duty imposed by R. C. 6111.01 to R. C. 6111.08, or violate any order, regulation, or term or condition of a permit issued by the director, pursuant to such sections, and that each day of violation is a separate offense. R. C. 6111.07(A).

The attorney general upon the written request of the

director shall prosecute any person who violates or fails to perform any duty imposed by R. C. 6111.01 to R. C. 6111.08 or who violates any order, regulation or condition of a permit issued by the director. The attorney general upon written request of the director shall bring an action for an injunction against any person violating or threatening to violate R. C. 6111.01 to R. C. 6111.08, or violating or threatening to violate any order, regulation or condition of a permit issued by the director pursuant to such sections. R. C. 6111.07(B).

In addition, R. C. Chapter 6111 provides various penalties in the forms of fines and imprisonment for violations. These are contained in R. C. 6111.99.

(4) R. C. Chapter 3704 dealing with air pollution, spells out the director's powers, R. C. 3704.03, what is prohibited, R. C. 3704.05, how the director may act in the event of an emergency, R. C. 3704.032, and that the director may request the attorney general to prosecute or seek an injunction against any violators of R. C. 3704.05. R. C. 3704.06. The foregoing provisions are similar to and parallel those dealing with water pollution under R. C. Chapter 6111.

The chapters on air pollution, Chapter 3704, solid waste disposal, Chapter 3734, and water pollution, Chapter 6111, have a common thread in that the director of EPA is charged with the responsibility of enforcing their provisions and that if the director finds that there is a violation of law he may file a complaint with the attorney general who shall then prosecute or bring an injunction action in the common pleas court in the county where the violation occurs. See R. C. 3704.06, R. C. 3734.10, R. C. 3745.08 and R. C. 6111.07(B). If the director determines that an emergency exists his order will take effect immediately and he may file his complaint with the attorney general, who will then bring the appropriate action in the common pleas court. If there is no emergency, the director must give a notice of his findings and the specific violations to the violator, who will have an opportunity to take an appeal to the board and if the director is sustained or affirmed, the violator can then appeal to the courts. It is again noted

that there is no automatic stay of execution of the director's order on the taking of an appeal to the board or to the courts and such stay order must be granted by the board or the courts. If no stay order is granted, the director's order takes effect immediately.

(5) R. C. Chapter 3767 is entitled "Nuisances" and the relevant sections are as follows.

No person shall corrupt or render unwholesome or impure a watercourse, stream or water or unlawfully divert such watercourse from its natural course or state to the injury or prejudice of others. R. C. 3767.13.

No person shall place or dispose of any garbage or waste or anything of an unsightly or unsanitary nature along or near any public road, street, parkway, except on land provided by a zoning commission, city ordinance or other governmental authority. R. C. 3767.20. No person shall place or dispose of any garbage or waste or anything else of an unsightly or unsanitary nature in any ditch, stream, river, lake, pond or other watercourse. R. C. 3767.32. It is noted that R. C. 3767.32 does not apply to any substance placed under authority of a permit issued under R. C. 6111.04, which provides in substance that no person shall cause pollution and the creation of such pollution is declared to be a public nuisance, except where the director of EPA has issued a valid permit under R. C. 6111.01 to R. C. 6111.08.

In addition R. C. 3767.99 is a penalty section which provides for fines and imprisonment for violation of certain sections in R. C. Chapter 3767.

Having reviewed the relevant package of Ohio environmental law, we will now discuss the appellant's four assignments of error and the various issues raised therein.

The first, second and third assignments of error will be considered together because they are concerned with the trial court's authority or jurisdiction to entertain an injunction action brought by the attorney general pursuant to R. C. 3767.13, R. C. 3767.32, R. C. 3734.10, and R. C. 6111.07(B) against the operator of a licensed solid waste disposal site in the absence of both an order from the di-

rector of EPA and a complaint from the director to the attorney general that he institute an injunction action against the alleged violations of R. C. 3734.01 to R. C. 3734.11.

In deciding these assignments of error the principal issue to be resolved is whether the exclusive remedy for determining whether a licensed solid waste disposal facility is violating the air pollution laws, water pollution laws, or solid waste disposal laws, and thus creating a nuisance or is a health hazard, is by the complaint, inspection, hearing and appeal procedures set forth in R. C. Chapter 3745, and the suspension, revocation, prosecution and injunction provisions of R. C. 3734.09 and R. C. 3734.10 or whether an independent action may be maintained under general nuisance statues R. C. 3767.13 and R. C. 3767.32.

The attorney general contends that he may maintain an injunction action against a licensed sanitary land fill operator who is polluting the air and water and thus constituting a nuisance, either by filing such injunction action under R. C. 3767.13 and R. C. 3767.32, or by filing an action under R. C. 3734.10. The attorney general further contends that R. C. 3734.10 is to be read independently of R. C. 3734.09 and that he may bring an injunction action in his own name and in his own right in the common pleas court against a licensed solid waste disposal operator who violates any of the provisions of R. C. 3734.01 to R. C. 3734.11. He contends that it is not necessary for the director to first make an order finding a violation of R. C. 3734.01 to R. C. 3734.11 and then to file a complaint with the attorney general requesting that he bring such injunction action. In other words the attorney general contends that R. C. 3734.10, R. C. 3767.13 and R. C. 3767.32 give him the independent authority to maintain an injunction action.

The attorney general's arguments are not valid. R. C. 3734.09 and R. C. 3734.10 are to be read in pari materia. It is only after the director issues an order that a licensed sanitary land fill facility is being operated in violation of R. C. 3734.01 to R. C. 3734.11 and files a complaint with the

attorney general requesting that he maintain an injunction action that the attorney general has authority to bring such an action.

Also, for the reasons which will be stated below, the procedures of complaint, investigation, hearing, order and appeal set forth in the chapter on the EPA, R. C. Chapter 3745 and R. C. 3734.09 and R. C. 3734.10, provide the exclusive method by which a licensed sanitary land fill facility may be found in violation of law and then enjoined from continuing the violation. These procedures also afford both the person against whom a complaint is filed and the person who files a complaint the opportunity to take an appeal from any adverse order of the director to the board and to the courts.

The purpose of the EPA is to administer the laws and regulations pertaining to the prevention, control and abatement of air and water pollution, treatment of solid wastes, sewage, and other duties. R. C. 3745.01. It was the intent of the legislature that the EPA shall prevent and abate pollution of the environment in order to protect and preserve the health, safety, welfare and property of the people of the state. R. C. 3745.011(B).

To carry out this legislative intent the procedures were established as discussed above. It is our position that these procedures regarding the licensing and administration of solid waste disposal facilities which include those dealing with complaint, hearing and appeal, suspension, revocation, prosecution and injunction, are the exclusive method of dealing with alleged violations or threatened violations under R. C. Chapter 3734. The legislature intended to make this the exclusive remedy for violations rather than making available the alternative remedy of filing an independent action directly in court under the nuisance statutes, R. C. 3767.13 and R. C. 3767.32.

The legislature created the environmental protection agency consisting of a staff of experts to investigate alleged complaints, to conduct hearings on these complaints and to make determinations as to whether the laws in regard to air and water pollution and sewage disposal are

180

being violated. A complainant must first take his complaint to the director of the EPA for processing before any court action may be initiated. It is obvious that the legislature provided this administrative procedure in lieu of permitting a complainant to immediately file an action in court alleging either a violation of one of the environmental laws or that a person is causing a nuisance. The legislature did not desire the courts to hear these cases ab initio. To permit the courts to entertain this litigation in the first instance would place them under a tremendous burden and further would not serve the best interests of all concerned. It is better to have all of the technical environmental matters heard and resolved at the administrative level before court action is initiated by way of appeal by a dissatisfied complainant or by an action initiated by the attorney general.

To have the attorney general or any citizen believing that there is an alleged violation file an action in court would be contrary to the intention of the legislature and would clog court dockets with a multitude of law suits requiring very lengthy trials because of the nature of this type of case.

However, the attorney general may bring an injunction action against a solid waste disposal licensee who is violating the regulations or law but this must be done pursuant to R. C. 3734.09 and R. C. 3734.10 after the director makes an order that there is a violation of such law or regulations and files a complaint with the attorney general requesting that he bring such injunction action in the common pleas court.

There is no authority permitting the attorney general to file an independent action on his own behalf for a violation of any of the provisions of R. C. Chapter 3734. He must wait until a complaint is filed with him by the board of health or the director requesting that such court action be filed under R. C. 3734.10 and this can be done only after the board of health or the director has acted by making a written order finding a violation of R. C. 3734.01 to R. C. 3734.11 or of any regulations promulgated thereunder.

It is noted that the language contained in R. C. 3734.10 and R. C. 3745.08, regarding persons who may file a complaint against a sanitary land fill operator for an alleged violation of R. C. 3734.01 to R. C. 3734.11, includes all persons. This would include the attorney general of Ohio in his individual capacity or as attorney general. The attorney general is thus not precluded from filing such a complaint and from taking an appeal to the board and to the courts from any decision by the director or the board which is adverse to him.

He can assert his right by filing a complaint with the director and then taking an appeal if necessary but he may not file an independent action under the nuisance statutes or under R. C. 3734.10 without the prior written order of the director and without a complaint having been filed with him by the director.

For the foregoing reasons the first, second and third assignments of error are not well taken. The trial court did not commit error when it held that it did not have authority or jurisdiction to issue an injunction against the holder of a solid waste disposal license, that the public nuisance act does not apply to the operation of a solid waste disposal site, and that under the facts in this case the attorney general did not have authority to prosecute Rockside for violations of the solid waste act.

The fourth assignment of error is concerned with two issues. One is whether a licensed solid waste disposal operator is exempt from the provisions of R. C. 6111.04 and may pollute the waters of the state without obtaining a permit from the director under R. C. 6111.04, and the second is whether the leachate and water flowing from the appellee's disposal site through Valley View and into the waters of the state constituted a discharge into a "sewerage system" maintained by the state of Ohio or a political subdivision thereof as defined in R. C. 6111.01(E).

R. C. 6111.04 provides that no person shall cause pollution of any waters of the state and any such action is declared to be a public nuisance. There are several exceptions. One is when the director has issued a valid and un-

expired permit as provided in R. C. 6111.04, and a second is if the discharge of sewage or other wastes is into a sewerage system maintained by the state or political subdivision. R. C. 6111.04(E).

The trial court held that a solid waste licensee is exempt from the permit requirements of R. C. Chapter 6111. It also held that the water and drainage over and through the appellee's disposal site runs into open sewers of Valley View and is therefore excepted from the operation and coverage of R. C. Chapter 6111, dealing with water pollution. In other words, the trial court found that the water and drainage over the appellee's disposal site ran into a "sewerage system" as defined in R. C. 6111.01(E).

The trial court was wrong as to both conclusions.

When a sanitary land fill operator is granted a license under R. C. Chapter 3734, he is presumed to know the law and to fully intend to comply with the law which requires that all such sites and facilities shall be maintained and operated in a sanitary manner so as not to cause a nuisance, cause or contribute to water pollution or create a health hazard. R. C. 3734.02. A license to operate a sanitary land fill is not a license to pollute the waters of the state of Ohio. No person shall cause pollution or place any sewage or any other wastes where they cause pollution in the waters of the state, and any such action is a public nuisance. R. C. 6111.04. If a person is polluting the waters of the state he must cease and desist or obtain a permit from the director under R. C. Chapter 6111. A licensed solid waste disposal facility is not exempt from the provisions of R. C. 6111.04.

Therefore, if in fact the appellee is polluting or finds it necessary to pollute the waters of the state he must obtain a permit from the director or he may not pollute the waters. If he is in fact polluting the waters and does not have a permit and the director makes such a finding, the director may file a complaint with the attorney general who may then file an injunction action in the common pleas court against the appellee as discussed above.

The trial court was also in error when it held that the

drainage over and through the appellee's disposal site was discharged into a "sewerage system" as defined in R. C. 6111.01(E). R. C. 6111.01(E) defines a "sewerage system" to mean pipe lines or conduits, pumping stations and force mains and all other constructions, devices, appurtenances and facilities used for collecting or conducting water-borne sewage, industrial waste or other wastes to a point of disposal or treatment.

Water running through open sewers and ditches and into the waters of the state, such as the Ohio Canal, Cuyahoga River or Lake Erie, is not considered a "sewerage system" as defined in R. C. 6111.01(E). A sewerage system contemplates the collecting and conducting of wastes to a point of disposal or treatment, and this means any facility used for the purposes of treating, stabilizing or holding sewage, industrial wastes or other wastes and not merely the passing of such wastes through open ditches to a point of disposal such as in a lake or river in an untreated manner.

The trial court incorrectly interpreted the definition of a sewerage system, and consequently the fourth assignment of error is well taken.

While the trial court was in error in its holding as to assignment of error four, this does not change the result in this case because it was disposed of by the trial court on a jurisdictional basis. However, Appellate Rule 12 requires that we write on every assignment of error and state the reasons for our rulings. Further, the foregoing explanation regarding whether a licensed sanitary land fill operator is exempt from the provisions of R. C. 6111.04 and also what constitutes a "sewerage system" under R. C. 6111.01 (E) may prove helpful in future litigation.

For the reasons stated above we affirm the judgment of the trial court.

*Judgment affirmed.*

JACKSON and MANOS, JJ., concur.