HARVARD REFUSE, INC., APPELLANT
AND CROSS-APPELLEE, *v.* CITY OF
CLEVELAND, APPELLEE AND
CROSS-APPELLANT.

(Nos. 46160 and 46169—Decided
July 23, 1984.)

*Jeffrey L. Kocian,* for appellant and cross-appellee.

*John D. Maddox,* director of law, and *Theodore J. Esborn,* for appellee and cross-appellant.

*Per Curiam.*

I

Harvard Refuse, Inc., plaintiff-appellant and cross-appellee (hereinafter appellant), is operating a solid waste disposal facility in the city of Cleveland, Ohio. The appellant has been operating this landfill since December 10, 1981, when a license for said operation was issued to it by the state of Ohio pursuant to R.C. Chapter 3734.

On December 14, 1981, the City Council of Cleveland passed several ordinances, being Nos. 551.31, 551.32, 551.33, 551.34, 551.35, 551.37 and 551.99. These ordinances required the appellant to obtain a license to operate said solid waste disposal facility not only from the state of Ohio but also from the city of Cleveland.

The appellant received notice that the Law Department of the city of Cleveland would proceed with some type of legal action against the appellant due to its failure to obtain a license from the city as required by the above cited ordinances. Therefore, on August 9, 1982, appellant filed a complaint in the common pleas court, seeking a declaratory judgment and injunctive relief. On August 11, 1982, the city of Cleveland, defendant-appellee and cross-appellant (hereinafter city), filed its answer and a counterclaim for injunctive relief. On October 13, 1982, the trial court granted the city's motion to dismiss appellant's complaint under Civ. R. 41(B)(2) and denied the relief sought by the city in its counterclaim. Both parties have appealed from the trial court's decision to this court.

II

The assignments of error presented by the appellant are:

"(1) The trial court applied an erroneous burden of proof standard when it required the plaintiff to prove the unconstitutionality of Chapter 551 of the codified ordinances of the City of Cleveland beyond a reasonable doubt.

"(2) The court erred in not declaring Chapter 551 of the codified ordinances of the City of Cleveland unconstitutional because it conflicts with Section [*sic*] 3734 of the Ohio Revised Code by forbidding what the State Statute permits and licenses."

The assignment of error presented by the city is:

"The trial court erred in refusing to enjoin plaintiff-appellant's open, continuous and intentional violation of the ordinances of the City of Cleveland requiring landfill operators to be licensed."

III

The issue presented by the appellant's first assignment of error is whether the trial court applied the prop-

er burden of proof when it stated as follows:

"Now, as the Court stated earlier, the Plaintiff bears the burden of proving beyond a reasonable doubt that the provisions of Chapter 551 are unconstitutional. This Court finds that the Plaintiff's evidence was insufficient to demonstrate that a conflict exists between the State statute and municipal code."

The burden of proof applied by the trial court is immaterial and will not be addressed herein due to this court's conclusion on appellant's second assignment of error. The first assignment of error is overruled.

IV

The issue presented by the appellant's second assignment of error is whether Chapter 551 of the codified ordinances of the city is in conflict with R.C. Chapter 3734 and thus unconstitutional.

The exclusive remedy for dealing with alleged violations of the air pollution laws, water pollution laws, and solid waste disposal laws by a licensee of a solid waste disposal facility or site is by way of the administrative provisions of R.C. Chapter 3745, relating to the Environmental Protection Agency, and the suspension, revocation, prosecution, and injunction provisions of R.C. 3734.09 and 3734.10.

State governments have acknowledged the long-range consequences of permitting the uncontrolled and unfettered pollution of their water, soil, and air, and they have passed legislation designed to regulate heretofore unbridled technology and wastefulness. Relevant laws on these subjects are contained in four chapters of the Ohio Revised Code: (1) R.C. Chapter 3745, Environmental Protection Agency; (2) R.C. Chapter 3734, solid waste disposal; (3) R.C. Chapter 6111, water pollution control; and (4) R.C. Chapter 3704, air pollution control.

The Ohio Legislature enacted R.C. Chapter 3745, effective October 23, 1972, which created the Environmental Protection Agency (hereinafter EPA). The legislature's intent in creating the EPA was to put into execution a long-term comprehensive program which would conserve, protect, and enhance the air, water, and other natural resources of the state; prevent and abate pollution of the environment for the protection and preservation of the health, safety, welfare, and property of the people of the state; administer the air, water, and other natural resources of the state for the use and benefit of the people of the state; and provide for enforcement of the right of the people to environmental quality consistent with human health and welfare.

The legislature provided a procedure whereby any aggrieved party could file a written complaint with the Director of the EPA and created an Environmental Board of Review to hear appeals from the decisions of the director. Thereafter, an aggrieved party can appeal a decision of the board of review to the appropriate court.

Judge Krenzler aptly summarized the licensing, enforcement, and appeal procedures set forth in R.C. Chapter 3734 in *State, ex rel. Brown*, v. *Rockside Reclamation* (1975), 48 Ohio App. 2d 157 [2 O.O.3d 137], affirmed (1976), 47 Ohio St. 2d 76 [1 O.O.3d 46]:

"* * * Under R.C. Chapter 3734, dealing with the licensing of solid waste disposal facilities, the director shall adopt regulations in regard to the inspection and issuance of such licenses and he must assure that all such facilities and sites will be located, maintained and operated in a sanitary manner so as not to create a nuisance, cause or contribute to water pollution or create a health hazard. R.C. 3734.02.

"The board of health in each district shall provide for the inspection, licensing and enforcement of sanitary standards for solid waste disposal facilities

in conformity with the rules and regulations promulgated by the director of the EPA. R.C. 3734.04.

"Further, no person shall operate a solid waste disposal site or facility without a license issued by the board of health of the health district in which such site or facility is located. R.C. 3734.05(A).

"Licenses to operate solid waste disposal facilities are valid for one year and are renewable by the board of health of the health district in which the site or facility is located. Transfer of an existing license to another person requires approval of both the board of health and the director. R.C. 3734.05(B).

"Upon a written complaint by any person the board of health or the director of EPA shall conduct such investigations and make such inquiries as are necessary to secure compliance with R.C. Chapter 3734, or the regulations adopted thereunder, R.C. 3734.10. Also the director or any board of health may upon complaint or upon their initiative investigate or make inquiries into any alleged violation or act of improper solid waste disposal. R.C. 3734.10.

"The board of health of a health district in which a solid waste disposal facility or site is located may suspend, revoke or deny a license for violations of R.C. 3734.01 to R.C. 3734.11. R.C. 3734.09. Unless there is an immediate serious public health hazard, no suspension, revocation or denial of a license shall be effective until the operator of the facility has been given notice in writing of the specific violations and a reasonable time to make corrections. No license shall be suspended, revoked or denied without a written order stating the findings upon which suspension, revocation or denial is based, and the copy of the order shall be sent to the applicant or licensee by certified mail. R.C. 3734.09.

"Appeal from any suspension, revocation or denial of a license shall be made in accordance with R.C. 3745.02 to R.C. 3745.06. R.C. 3734.09 as stated above.

"The attorney general or the prosecuting attorney of the county or the solicitor of the city where a violation occurs, upon complaint of the respective board of health of the health district or the director of EPA shall prosecute to termination or bring an action for injunction against any person violating R.C. 3734.01 to R.C. 3734.11. R.C. 3734.10.

"The common pleas court in which an action for an injunction is filed has jurisdiction to grant injunctive relief upon a showing that the respondent named in the petition is operating a solid waste disposal site or facility in violation of R.C. 3734.01 to R.C. 3734.11. R.C. 3734.10.

"Therefore, if the board of health or the director of EPA determines that there is an immediate serious public health hazard, either one may request the attorney general, prosecuting attorney or city solicitor to bring an injunction action against any person violating R.C. 3734.01 to R.C. 3734.11." *Id.* at 171-172.

Preemption issues arise when different governmental authorities adopt laws on the same subject. The General Assembly has enacted legislation to provide for effective enforcement of pollution control and abatement measures and for better coordinated oversight of state environmental protection activities. See 43A Ohio Jurisprudence 2d (1973), Pollution Control, Sections 1 and 116 *et seq.*

The procedures of complaint, investigation, hearing, order and appeal set forth in R.C. Chapter 3745 and R.C. 3734.09 and 3734.10 provide the exclusive method by which a licensed sanitary landfill facility may be found in violation of the law. These procedures also afford both the person against whom a complaint is filed and the person

who filed a complaint the opportunity to take an appeal from any adverse order of the director to the board of review and to the courts.

The purpose of the EPA is to administer the laws and regulations pertaining to the prevention, control, and abatement of air and water pollution. See R.C. 3745.01. It was the intent of the legislature that the EPA shall prevent and abate pollution of the environment in order to protect and preserve the health, safety, welfare, and property of the people of the state. See R.C. 3745.011(B).

To carry out this legislative intent the above-described procedures were established. It is our position that these procedures regarding the licensing and administration of solid waste disposal facilities, which include those dealing with complaint, hearing and appeal, suspension, revocation, prosecution and injunction, are the exclusive method of dealing with alleged violations or threatened violations under R.C. Chapter 3734.

The legislature created the Environmental Protection Agency consisting of a staff of experts to investigate alleged complaints, to conduct hearings on these complaints, and to make determinations as to whether the laws in regard to air and water pollution and sewage disposal are being violated.

Section 3 of Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This section, adopted in 1912, preserved the supremacy of the state in matters of "police, sanitary and other similar regulations," while granting municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions. Municipalities may enact police and similar regulations under their powers of local self-government, but such regulations "must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government." See *State, ex rel. Klapp*, v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14 [39 O.O.2d 9], paragraph one of the syllabus.

Due to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulations, if any, have now become a matter of statewide concern, creating the necessity for statewide control. R.C. Chapter 3745 is a general statute with a statewide comprehensive plan for uniformity and any ordinance imposing more restrictive requirements is in conflict therewith and is *ipso facto* invalid. See *East Ohio Gas Co.* v. *Akron* (1978), 60 Ohio App. 2d 21 [14 O.O.3d 10]; *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363 [20 O.O.3d 327]; *State, ex rel. Williams*, v. *Bozarth* (1978), 55 Ohio St. 2d 34 [9 O.O.3d 19].

A method of solid waste disposal is the sanitary landfill. A sanitary landfill is defined by the American Society of Engineers as a method of disposing of refuse on land, without creating nuisances or hazards to public health or safety, by utilizing the principles of engineering to confine the refuse to the smallest practical area.

Neither the health department nor the Environmental Protection Agency are public utilities. Their duties are limited to seeing that others, including local governmental units, comply with health, pollution, and environmental laws and regulations; that is, the en-

forcement of laws and regulations. See *North Sanitary Landfill* v. *Bd. of County Commrs.* (1976), 52 Ohio App. 2d 167 [6 O.O.3d 162]; 1982 Ohio Atty. Gen. Ops. 2-241, No. 82-087; Ohio Adm. Code 3745-37-01 *et seq.* (EPA regulations).

The appellant's second assignment of error is found to have merit as Chapter 551 of the Codified Ordinances of the city of Cleveland, as enacted December 14, 1981, by the City Council of Cleveland, is invalid. The state of Ohio has preempted the legislative field by the enactment of R.C. Chapter 3745, and the Cleveland ordinances, being in conflict therewith, are unconstitutional. Appellant's second assignment of error is sustained.

### V

The issue presented by the city's assignment of error is whether the appellant must obtain a license to operate its facility from the city of Cleveland. This court's ruling on appellant's second assignment of error is dispositive of this issue; thus, said assignment of error is denied. See *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26.

### VI

We sustain the appellant's second assignment of error and reverse the judgment of the trial court. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and
cause remanded.*

HARRIS, P.J., CIRIGLIANO and STAPLETON, JJ., concur.

HARRIS and CIRIGLIANO, JJ., of the Court of Common Pleas of Lorain County, and STAPLETON, J., of the Court of Common Pleas of Brown County, sitting by assignment in the Eighth Appellate District.