THE CLEVELAND ELECTRIC ILLUMINATING CO., APPELLEE, *v.* CITY OF PAINESVILLE, OHIO, APPELLANT, ET AL.

[Cite as Cleveland Electric Illuminating Co. v. Painesville, 15 Ohio St. 2d 125.]

(No. 41074—Decided July 10, 1968.)

Mr. Lee C. Howley, Mr. Donald Hauser, Messrs. Squire, Sanders & Dempsey, Mr. John Lansdale, Messrs. Baker, Byron & Hackenberg and Mr. Charles P. Baker, Jr., for appellee.

Mr. Wayne Milburn, director of law, Messrs. Dinsmore, Shohl, Coates & Deupree and Mr. James W. Farrell, Jr., for appellant.

Matthias, J. The primary question raised by this appeal is whether a municipality may refuse to consent to the installation of high voltage electric transmission lines which will pass through but not serve such municipality and whether it can regulate the construction or location of such lines if it does consent.

This court in State, ex rel. Cleveland Electric Illuminating Co., v. Euclid, 169 Ohio St. 476, said in the syllabus:

"1. A municipal corporation may prescribe reasonable regulations for the installing of electric power lines through or into its territorial limits and may withhold its consent for the installation of such power lines until such regulations are complied with. (Sections 715.27, 4933.13 and 4933.16, Revised Code, construed and applied.)

"2. A municipal ordinance which provides that all electric power lines installed within or through the municipality's territorial limits and carrying greater voltage than 33 KV (33,000 volts) shall be installed underground is not an unreasonable regulation unrelated to the health, safety and welfare of the inhabitants of the municipality."

Subsequent to the enunciation of this decision the General Assembly enacted Section 4905.65, Revised Code, which excludes from the control of local subdivisions intercity high voltage electrical transmission lines of 22 KV (22,000 volts) or more which are constructed in accordance

with generally accepted safety standards and do not unreasonably affect the welfare of the general public.*

It is appellant's argument that this provision is invalid in that it invades its home-rule powers under Section 3 of Article XVIII of the Ohio Constitution; that irrespective of this section its consent is required under Section 4933.16, Revised Code, before such lines may be erected; and that it has the power to pass reasonable regulations as to the construction and location of such lines.

The issue is the validity, and if valid, the effect of Section 4905.65, Revised Code, upon the powers of a local subdivision as set forth in *State, ex rel. Cleveland Electric Illuminating Co.*, v. *Euclid, supra*, and Section 4933.16, Revised Code, upon which such case is based.

---

*The full text of the statute reads as follows:

"(A) As used in this section:

"(1) 'Public utility' means any electric light company, as the same is defined in Sections 4905.02 and 4905.03 of the Revised Code.

"(2) 'Public utility facility' means any electric line having a voltage of twenty-two thousand or more volts used or to be used by an electric light company and supporting structures, fixtures, and appurtenances connected to, used in direct connection with, or necessary for the operation or safety of such electric lines.

"(3) 'Local regulation' means any legislative or administrative action of a political subdivision of this state, or of an agency of a political subdivision of this state, having the effect of restricting or prohibiting the use of an existing public utility facility or facilities or the proposed location, construction, or use of a planned public utility facility or facilities.

"(B) To the extent permitted by existing law a local regulation may reasonably restrict the construction, location, or use of a public utility facility, unless the public utility facility:

"(1) Is necessary for the service, convenience, or welfare of the public served by the public utility in one or more political subdivisions other than the political subdivision adopting the local regulation; and

"(2) Is to be constructed in accordance with generally accepted safety standards; and

"(3) Does not unreasonably affect the welfare of the general public.

"Nothing in this section prohibits a political subdivision from exercising any power which it may have to require, under reasonable regulations not inconsistent with this section, a permit for any construction or location of a public utility facility proposed by a public utility in such political subdivision."

First, is Section 4905.65, Revised Code, invalid as conflicting with the powers of local self-government and police power bestowed on municipalities by Section 3 of Article XVIII?

The power granted under Section 3 of Article XVIII relates to local matters and even in the regulation of such local matters a municipality may not infringe on matters of general and statewide concern.

The test as to matters of local self-government is set forth in the opinion of *Beachwood* v. *Board of Elections of Cuyahoga County*, 167 Ohio St. 369, 371:

"To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest.

As was said in the opinion in *State, ex rel. McElroy,* v. *Akron*, 173 Ohio St. 189, 192:

"Due to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control."

This is the situation presently before us. In the early days of the production of electric power the individual electric company served an individual municipality and was subject to local control. There was no problem as to intrastate lines. Today the situation has changed and a single electric company serves large areas and many municipalities. The transmission of electric energy is now of

general concern, and it is in the paramount interest of the state to provide general laws regulating the intrastate transmission of such current and to see that such transmission is not impeded by local regulation. Laws of general application are therefore essential.

Section 4905.65, Revised Code, is such a law. It places in each political subdivision control over matters which relate strictly to that subdivision but removes from absolute local control matters which relate to intrastate and intercity transmission of high voltage electricity. It is not invalid as in conflict with Section 3 of Article XVIII of the Ohio Constitution.

What effect then does Section 4905.65, Revised Code, have on this court's holding in *State, ex rel. Cleveland Electric Illuminating Co.,* v. *Euclid, supra* (169 Ohio St. 476), and upon Section 4933.16, Revised Code, upon which such case is based?

Our conclusion is that that statute does not abrogate the ruling in the *Euclid case,* but merely modifies it. It does not have the effect of making a reasonable ordinance unreasonable. Such statute merely has the effect of excluding from the operation of such ordinances certain public utility facilities. The new statute alters the former ruling to the extent that a city now may not prohibit the construction of "public utility facilities" *i.e.,* "any electric line having a voltage of twenty-two thousand or more volts," nor may it interfere with the proposed construction thereof so long as the proposed construction of such facilities complies with the provisions of Section 4905.65, Revised Code, including that of not unreasonably affecting the welfare of the inhabitants of the municipality, as required by subsection (B) (3).

Nor does Section 4905.65, Revised Code, repeal Section 4933.16, Revised Code, which requires the consent of the municipality before electric transmission wires may be erected. These sections must be read *in pari materia,* and when so read Section 4933.16, Revised Code, is modified by Section 4905.65, Revised Code, in that a local subdivision now may not prohibit the construction of such lines but, under certain circumstances, may impose reasonable con-

ditions before it gives its consent. For example, if a proposed construction would so interfere with city planning as to affect the general welfare under Section 4905.65 (B) (3), Revised Code, the city could refuse its permit.

In other words, Section 4905.65, Revised Code, providing for the regulation of the construction of high voltage electric power lines by local subdivisions excludes from the control of such subdivisions intercity lines constructed with regard to the proper safety standards which do not unreasonably affect the welfare of the general public. Conversely, such statute places control over such lines within the power of the municipality if they do not conform to the requirements of this section.

Under Section 4905.65, Revised Code, a local subdivision may not prohibit the construction or regulate intercity electric lines constructed with proper safety standards which do not unreasonably affect the welfare of the general public.

In the present case, the parties at the trial stipulated that the lines involved were intercity lines; that they would be constructed in accordance with generally accepted safety standards; and that such lines would not affect the general welfare of the people of the city of Painesville to a greater extent than such lines would affect the general welfare of persons similarly situated.

The Common Pleas Court specifically found that none of the transmission lines would unreasonably affect the welfare of the general public within the meaning of Section 4905.65 (B), (3), Revised Code, and appellant has acquiesced in that finding. Therefore, this court determines that appellee is excluded from the operation of Ordinance No. 18-65 by virtue of having complied with the conditions enumerated in Section 4905.65 (B) (3), Revised Code, which qualify it for exclusion.

The Common Pleas Court erred in its determination that Ordinance No. 18-65 of the city of Painesville was an unreasonable regulation not sufficiently related to the health, safety and welfare of the inhabitants of the municipality.

The Common Pleas Court found that the city of Pain-

esville has established a city planning commission, as permitted by Section 713.01, Revised Code, and that the commission has promulgated a city plan recommending general locations for the placement of utilities. Under Section 713.02, Revised Code, the commission may require that plans as to location be submitted for its approval. Although commission disapproval is subject to review by higher governmental authority, the city does have the opportunity to seek compliance with its overall community plan.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.

TAFT, C. J., concurring. Appellant did not contend in this court that Section 4905.65, Revised Code, conflicts with its home-rule power under Section 3, Article XVIII of the Ohio Constitution. This is indicated by its statement of questions, the argument in its briefs and the following quotation at the end of its reply brief:

"In conclusion, Painesville submits that there are only two questions presented by this appeal:

"1. Can a public utility, despite the provisions of R. C. Section 4933.16, place or maintain electric wires or fixtures in or across municipal streets without the consent of the municipality?

"2. Is an ordinance which requires underground construction of electric lines traversing urban areas and carrying electric energy at voltages in excess of 33 KV reasonable and valid?"

Furthermore, those portions of the majority opinion, which consider whether Section 4905.65, Revised Code, does conflict with Painesville's home-rule power, seem to me to be inconsistent with our holdings in *Fremont* v. *Keating* (1917), 96 Ohio St. 468, 118 N. E. 114; *Froelicher* v. *Cleveland* (1919), 99 Ohio St. 376, 124 N. E. 212; *Union Sand & Supply Corp.* v *Fairport* (1961), 172 Ohio St. 387,

176 N. E. 2d 224, and *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 205 N. E. 2d 382.

Hence, I find it necessary to write this opinion in order to state briefly my reasons for concurring in the judgment.

In addition to the facts previously stated, it appears without dispute that the proposed transmission lines will be constructed and maintained entirely on a right of way owned by plaintiff, except to the extent that the conductors thereof will occupy space above certain streets and a public park of the city of Painesville which will be crossed by those transmission lines.

By Section 4933.15, Revised Code, plaintiff is given the right of eminent domain to acquire property needed for such proposed transmission lines.

Section 4931.01, Revised Code, provides in part:

"* * * any person may construct telegraph lines upon and along any of the public roads and highways * * * within this state, by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of such lines. Such lines shall be constructed so as not to incommode the public in the use of the roads or highways * * *."

Section 4933.14, Revised Code, makes the foregoing section applicable to electric public utilities such as plaintiff.

What is now Section 4933.16, Revised Code, which prohibits anyone from placing or maintaining electric wires or fixtures through a street or land of a municipality without the consent of the municipality, was first enacted in 1896 as a proviso to what is now Section 4933.14, Revised Code.

This leads to the question asked in Judge Matthias' opinion: "What effect then does Section 4905.65, Revised Code, have on this court's holding in" the *Euclid case* "and upon Section 4933.16, Revised Code, upon which such case is based?"

I agree generally with the subsequent portion of his opinion.