EAST OHIO GAS COMPANY, APPELLEE, *v.* THE CITY OF AKRON, APPELLANT.

[Cite as East Ohio Gas Co. v. Akron (1978), 60 Ohio App. 2d  21.]

22

*Mr. John M. Glenn,* for appellee.

*Mr. John E. Holcomb,* for appellant.

*Mr. William J. Brown,* Attorney General, and *Mr. Marvin I. Resnik,* for intervenor, Public Utilities Commission of Ohio.

MAHONEY, P.J.   The defendant, the city of Akron, appeals the judgment of the Court of Common Pleas finding ordinance 133-1977, purporting to regulate certain activities of the plaintiff, East Ohio Gas Company, invalid. We affirm.

*Facts*

City council enacted ordinance 133-1977 on February 14, 1977. This ordinance purports to amend or supplement the plaintiff's franchise to distribute natural gas in the city. This franchise was given in ordinance 1071-1959. Section 3-A of ordinance 133-1977 prohibits the plaintiff from terminating or discontinuing service to any residential customer in the city during the period from October 15 through April 15 of the following year for non-payment or delinquency of the customer's account, unless the account is 30 days in arrears as of October 15, provided, however, that the customer has not obtained service through misrepresentation or fraud. Section 3-B prohibits the plaintiff from charging a deposit for non-payment or delinquency of an account or as a precondition to the resumption of service discontinued for nonpayment or delinquency or any service charge or fee for the resumption of service other than the gross amount due and owing on the account. Section 3-B covers residential customers in the city who have not obtained service through misrepresentation or fraud and who have signed a contract for service. Section 3-B-1 requires the plaintiff to restore service to any residential customer who has had service discontinued for non-payment or delinquency of his account upon

payment of at least fifty percent of the gross amount due and the agreement of the customer to pay the balance within ninety days of resumption of service, provided the customer pays bills for current service in a timely manner. The original effective date of ordinance 133-1977 was March 17, 1977. Further action taken by city council concerning the effective date of the ordinance is noted *infra*.

On October 17, 1977, the plaintiff filed a complaint seeking declaratory and injunctive relief from ordinance 133-1977. Ordinance 133-1977 was alleged to be invalid by reason of conflicts with R. C. 4933.12 and R. C. 4933.17, and with certain rules promulgated by the Public Utilities Commission of Ohio (P.U.C.O.), by reason of violations of the state and federal constitutions, and by reason of a direct violation of the city charter. A motion to intervene was filed by one Vickie Diamond and 43 other city residents. The trial court allowed this group to participate as *amicus curiae*. A motion to intervene was also filed by the Ohio Housing Coalition, an entity describing itself as, "a non-profit corporation with a primary purpose 'to participate in any and all other activities designed to promote the goal of providing a decent, safe, and sanitary home for every citizen of Ohio.' " The trial court allowed the coalition to participate as *amicus curiae*. The *amici curiae* maintained the trial court lacked jurisdiction, which resided, they said, in the P.U.C.O. They maintained, in the alternative, that ordinance 133-1977 was valid. Another motion to intervene was filed by the P.U.C.O. The trial court granted this motion. The P.U.C.O. argued that it did not have jurisdiction over the controversy. It also maintained that ordinance 133-1977 was invalid. Both the defendant and the plaintiff asserted that the trial court had jurisdiction.

The trial court held a hearing on the plaintiff's request for preliminary injunctive relief. No injunction was issued, however, as the court determined it would render a decision on the merits. The defendant answered the complaint, in part admitting that ordinances 214-1977 and 675-1977 were invalid as emergency measures.

The trial court found it had jurisdiction and that the ordinance was invalid in that it conflicted with both R. C. 4933.12 and R. C. 4933.17.

The Ohio Housing Coalition renewed its motion to intervene before this court. We denied the motion to intervene but granted the alternative request to participate as *amicus curiae.*

*Jurisdiction*

We are first met with the claim that the trial court does not possess jurisdiction to pass on the merits of this controversy. This contention is advanced solely by the *amicus curiae.* The plaintiff and the intervenor take the contrary position. The defendant does not address this question on appeal, but we assume that it adheres to its position before the trial court that jurisdiction is proper in the Court of Common Pleas.

Our first principle is that the P.U.C.O. is a creature of statute. As such, it may exercise only that jurisdiction which is expressly granted to it by statute, see, e.g., *Penn Central Transportation Co.* v. *Pub. Util. Comm.* (1973), 35 Ohio St. 2d 97; *State, ex rel. Thomas,* v. *Thomas* (1929), 121 Ohio St. 450; *New Breman* v. *Pub. Util. Comm.* (1921), 103 Ohio St. 23. Where, however, the legislature has lodged power over a particular subject with the P.U.C.O., that power is exclusive with the P.U.C.O., and its orders in the exercise of that power are reviewable only in the Ohio Supreme Court. *State, ex rel. Columbia Gas,* v. *Kiroff* (1976), 46 Ohio St. 2d 397; *State ex rel. Northern Ohio Telephone Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6.

The *amicus curiae* says that R. C. 4909.18 and R. C. 4909.34-.39 establish a regulatory framework vesting the P.U.C.O. with exclusive jurisdiction over municipal ordinances dealing with utility matters. We disagree. R. C. 4909.18 deals with applications filed by public utilities with the P.U.C.O. concerning the establishment of, or change in rates, tolls, charges, etc., or regulations or practice affecting same. R. C. 4909.34 concerns the power of a municipal corporation to enact an ordinance fixing the prices, rates, charges, tolls, or rentals which a public utility may charge, demand, exact, or collect for its product. Procedure for review of the ordinance by the P.U.C.O. is also set forth in the statute. R. C. 4909.39 concerns the power of the P.U.C.O. to review an ordinance encompassed by R. C.

4909.34. We agree with the contention of the P.U.C.O. intervenor and the plaintiff that ordinance 133-1977 is not the type of ordinance contemplated by R. C. 4909.34. Ordinance 133-1977 does not purport to fix rates. We find, therefore, that the P.U.C.O. does not possess jurisdiction to review ordinance 133-1977, and that the trial court did have jurisdiction.

### Assignment of Error I

"The court erred by not finding that the ordinance is a valid exercise of the city of Akron's Municipal Authority pursuant to those statutory provisions of the general assembly specifically delegating to municipalities the power to enact ordinances granting to natural gas companies the right to use public right-of-way subject to such regulations and restrictions as the legislative authority of the municipal corporation prescribes."

In *Federal Gas & Fuel Co.* v. *Columbus* (1917), 96 Ohio St. 530, the court examined a provision of the original franchise contract given by the city to the company in 1899. The provision required the annual payment to the city of ten percent of all moneys received by the company from the sale of natural gas sold in excess of fifteen cents per thousand cubic feet. The company argued in part that the tax was *ultra vires*. The court rejected this argument, finding authority for the tax in G. C. 3714 (now R. C. 723.01) and R. S. 3878 (then G. C. 10129, now R. C. 1723.02).

The defendant contends that *Federal Gas & Fuel Co., supra,* is controlling precedent for upholding ordinance 133-1977 pursuant to R. C. 723.01, R. C. 1723.02, and by analogy, R. C. 4933.01. We are not so persuaded.

In *Federal Gas & Fuel Co., supra,* the court was concerned with the question whether, in 1899, a municipality possessed the power to have such a provision in a franchise contract. The court set its face against the doctrine that a municipality was a mere creature of the General Assembly. The court found that Section 6, Article XIII, of the Constitution of 1851, did not mandate a "superstrict construction" of the grant of power to a municipality by the General Assembly.

The aspect of *Federal Gas & Fuel Co., supra* at 535, 536,

which is decisive against the defendant's claim is stated in this fashion by the court:

"The constitutional convention of 1912, in protest of that order, abolished by constitutional amendment general-assembly rule of municipalities, and sought to establish *home rule*. It is now for this court to correct the second evil, the superstrict construction of grant of power in matters that are peculiarly within the right of local self-government.***"

Ordinance 133-1977 has been found to conflict with general law and, thus, be invalid under Section 3, Article XVIII, of the Ohio Constitution. If this result is correct, it precludes sustaining the ordinance for the reasons here advanced by the defendant. We hold *infra* that ordinance 133-1977 is so invalid.

### Assignment of Error II

"The court erred by not finding that the requirements of ordinance No. 133-1977 are valid and binding upon the East Ohio Gas Company because the ordinance constitutes a contract between the city of Akron and the company sanctioned by Article XVIII, Section 4 of the Ohio Constitution which also protects such a contract from legislative or judicial impairment."

Section 4, Article XVIII, of the Ohio Constitution, states in part:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service.***"

The defendant says ordinance 133-1977 amends or supplements the original franchise grant to the plaintiff expressed in ordinance 1071-1959. Ordinance 133-1977 should, consequently, be construed as an exercise of the defendant's authority pursuant to Section 4, Article XVIII, Ohio Constitution, to "contract with others for any such product or service." The defendant says a contract of this nature is immune from judicial or legislative impairment, and free from any stricture flowing from Section 3, Article XVIII, Ohio Constitution. *Swank* v. *Shiloh* (1957), 166 Ohio St. 415, and *Bd. of Education* v. *Columbus* (1928), 118 Ohio St. 295, are

said to confirm the latter assertion. It is not clear to us that a contract made under Section 4, Article XVIII, Ohio Constitution, has the immunity claimed for it by the defendant. See, *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14; *Akron* v. *P.U.C.O.* (1948), 149 Ohio St. 347. We nevertheless assume it does, since we find that ordinance 133-1977 has not been accepted by the plaintiff.

The defendant asserts that ordinance 133-1977, as a supplement or amendment to ordinance 1071-1959, has been impliedly accepted by the plaintiff. See, *State, ex rel. Martin,* v. *Ohio Electric Power Co.* (1928), 35 Ohio App. 481, affirmed, 121 Ohio St. 235; *State, ex rel. Cincinnati & Suburban Bell Telephone Co.,* v. *Norwood* (1915), 23 C. C. (NS) 145, 149. This implied acceptance allegedly came about through the plaintiff's delay in bringing suit against 133-1977 while continuing to reap the benefits of its original contract with the defendant. City council attempted to twice delay the effective date of ordinance 133-1977. The original effective date of ordinance 133-1977 was March 17, 1977. On March 14, council passed ordinance 214-1977 which purported to postpone the effective date of ordinance 133-1977 until September 1. On July 25, council enacted ordinance 675-1977 which purported to postpone the effective date of ordinance 133-1977 to October 15. Plaintiff filed suit on October 17, in part averring that "the ordinance" was invalid as an emergency measure under the city charter. The defendant admitted in its answer that ordinances 214-1977 and 675-1977 were void.

The defendant apparently believes the plaintiff should have filed suit immediately after or prior to March 17, notwithstanding that council had enacted ordinance 214-1977 on March 14. We find that the defendant's contention is groundless. We assume city council was unaware that ordinances 214-1977 and 675-1977 were invalid when council enacted them. The plaintiff cannot be held to have impliedly accepted ordinance 133-1977 by reason of city council's enactment of two invalid ordinances. The plaintiff brought suit immediately after the effective date asserted for the ordinance by the defendant. The defendant cannot transform its own mistakes into the advantage sought here.

28

"The court erred by not finding that ordinance No. 133-1977 is a valid exercise of the city of Akron's power of local self-government granted to municipalities in Article XVIII, Section 3 of the Ohio Constitution which power is not subject to the no conflict prohibition contained in the same section."

Section 3, Article XVIII, of the Ohio Constitution, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The trial court cited *Cleveland Electric Illuminating Co. v. Painesville* (1968), 15 Ohio St. 2d 125, for the proposition that the regulation of non-municipally owned public utilities is an area "where the state has a primary concern and local regulations in conflict with state law are invalid." The court then went on to hold ordinance 133-1977 invalid as being in conflict with R. C. 4933.12 and R. C. 4933.17. The defendant asserts that ordinance 133-1977 derives from its power of local self-government. It is recognized that the prohibition against conflict with general laws contained in Section 3, Article XVIII, Ohio Constitution, does not apply to municipal exercise of the power of local self-government. *Beacon Journal Publishing Co. v. Akron* (1965), 3 Ohio St. 2d 191, 195; *State, ex rel. Canada, v. Phillips* (1958), 168 Ohio St. 191; *State, ex rel. Bindas, v. Andrish* (1956), 165 Ohio St. 441. The Supreme Court spoke to the concept of "local self-government" in *Britt v. Columbus* (1974), 38 Ohio St. 2d 1, 6:

"This court has never framed an all-inclusive definition of the term 'all powers of local self-government' appearing in Section 3 of Article XVIII. In the context of specific cases before it, the term has been stated to mean '* * * such powers of government as, in view of their nature and the field of their operation, are local and municipal in character' *(State, ex rel. Toledo, v. Lynch* [1913], 88 Ohio St. 71, 97); 'the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular com-

munity' *(Fitzgerald* v. *Cleveland* [1913], 88 Ohio St. 338, 344), 'the phrase "all powers of local self-government" as used [in Section 3] means the power of self-government in all matters of a purely local nature' *(State, ex rel. Arey,* v. *Sherrill* [1944], 142 Ohio St. 574)."

Necessarily, such powers are *local* in nature: when municipal enactments involve an extraterritorial operation it cannot be claimed the power of local self-government is involved. See, *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81, 90. In *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, the municipality claimed that the detachment of territory from a municipality constituted an exercise of the power of local self-government and consequently municipal charter provisions superseded general statutes. The court rejected this claim on two grounds, holding that the municipal enactments were not local in nature and that the subject of detachment was beyond municipal competence to regulate. The syllabus of *Beachwood, supra,* states:

"1. The power of local self-government granted to municipalities by Article XVIII of the Ohio Constitution relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of a statute conferring a broader power, municipal legislation must be confined to that area.

"2. The detachment of territory from a municipality does not fall within the sphere of local self-government but is a subject which requires the establishment of a uniform procedure throughout the state and is exclusively within the control of the General Assembly."

The court explained its test for determining whether municipal legislation is local in nature in the following manner:

"* * * Where a proceeding is such that it affects not only the municipality itself but the surrounding territory beyond its boundaries, such proceeding is no longer one which falls within the sphere of local self-government but is one which must be governed by the general law of the state.

"To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceeding thereunder must be con-

sidered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

*Beachwood, supra* at 371.

In *Cleveland Electric Illuminating Co.* v. *Painesville, supra,* the utility sought to construct power lines, used for the intercity transmission of electric power, which would traverse the city for some two miles. The lines would carry electric current at 345 KV, 132 KV, and 33 KV. The city refused to consent to the construction. The utility sought a declaratory judgment on whether consent of the city was necessary. The city thereupon enacted an ordinance requiring a permit for the construction of power lines through the city and that lines carrying more than 33 KV be placed underground. The utility then sought a declaration invalidating this ordinance. The first question raised and answered was whether R. C. 4905.65 was in conflict with the powers conferred on municipalities by Section 3, Article XVIII, Ohio Constitution. Citing *Beachwood* v. *Bd. of Election,* the court answered this question in the negative and stated:

"Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public on the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest.

"As was said in the opinion in *State, ex rel. McElroy,* v. *Akron,* 173 Ohio St. 189, 192:

" 'Due to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control.'

"This is the situation presently before us. In the early days of the production of electric power the individual electric company served an individual municipality and was subject to local control. There was no problem as to intrastate lines. Today the situation has changed and a single electric

company serves large areas and many municipalities. The transmission of electric energy is now of general concern, and it is in the paramount interest of the state to provide general laws regulating the intrastate transmission of such current and to see that such transmission is not impeded by local regulation. Laws of general application are therefore essential.

"Section 4905.65, Revised Code, is such a law."

*Cleveland Electric Illuminating Co.* v. *Painesville, supra* at 129.

The defendant asserts that the *Beachwood* test, *(Beachwood, supra* at 371) is "the appropriate test for determining whether a municipality's action is an exercise of power of local self-government or the police power***." Since, the defendant contends, ordinance 133-1977 has no extra-territorial effects, it falls within the defendant's local self-government power. The plaintiff maintains that the *Beachwood* test as explained in *Painesville, supra,* has two parts and that ordinance 133-1977 is an exercise of municipal police power under either of them. First, the plaintiff says, the ordinance has an extra-territorial effect. Suffice it to say that no evidence in the record supports this assertion. Second, the plaintiff argues that the pertinent subject matter characterized by the plaintiff as the "operation of basic energy-supplying utilities," is a matter of general concern, demanding laws of general application. We believe the plaintiff's definition of the relevant subject matter is too broad insofar as it would operate to divest a municipality of all regulatory authority over a public utility. We do not find, however, that ordinance 133-1977 flows from the defendant's power of local self government. We do not believe the *Beachwood-Painesville* formulation, *supra,* delineates the power of local self-government from the municipal police power. The municipal police power must also be *local* in its operation. See, *Britt* v. *Columbus, supra* at 7. As the court said in *Canton* v. *Whitman* (1975), 44 Ohio St. 2d. 62, 66:

"The power of local self-government and that of the general police power are constitutional grants of authority equivalent in dignity. A city may not regulate activities outside its borders, and the state may not restrict the exercise of the powers of self-government within a city. The city may ex-

ercise the police power within its borders, but the general laws of the state are supreme in the exercise of the police power, regardless of whether the matter is one which might also properly be a subject of municipal legislation. Where there is a direct conflict, the state regulation prevails."

We find that ordinance 133-1977 is a police, sanitary or other similar regulation. Its prohibitions are designed to protect the health and safety of plaintiff's residential customers situated in the city. *Cf. Leis* v. *Cleveland Ry. Co.* (1920), 101 Ohio St. 162. Municipal regulation of public utilities arising from Section 3, Article XVIII, Ohio Constitution, has been recognized as an exercise of the municipal police power. See, *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14; *Cleveland* v. *Pub. Util. Comm.* (1936), 130 Ohio St. 503; *Nelsonville* v. *Ramsey* (1925), 113 Ohio St. 217; *Cleveland Telephone Co.* v. *Cleveland* (1918), 98 Ohio St. 358.

We now proceed to determine whether ordinance 133-1977 is in conflict with R. C. 4933.12 and R. C. 4933.17. It is undisputed that those statutes constitute "general laws." The test for determining whether a municipal ordinance enacted pursuant to local municipal police power conflicts with general law is stated in the second paragraph of the syllabus of *Struthers* v. *Sokol* (1923), 108 Ohio St. 263:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

The plaintiff says section 3-A of ordinance 133-1977 conflicts with R. C. 4933.12 (A). Section 3-A of the ordinance expressly prohibits the plaintiff from discontinuing service to any residential customer in the city during the period from October 15 through April 15, unless the customer's account is 30 days in arrears as of October 15, provided service was not obtained through certain culpable conduct on the part of the customer. R. C. 4933.12 provides in part:

"(A) Except as provided in division (C) of this section, if any person supplied with gas neglects or refuses to pay the amount due for such gas or for rent of articles hired by him from a natural gas company or a gas company, the company may stop the gas from entering the premises of such person.

In such cases, after twenty-four hours notice, the officers, servants, or workmen of the company, may enter the premises of such parties, between eight a.m. and four p.m., take away such property of the company, and disconnect any meter from the mains or pipes of the company.

"(B) The company shall not refuse to furnish gas on account of arrearages due it for gas furnished to persons formerly receiving services at the premises as customers of the company, provided the former customers are not continuing to reside at such premises.

"(C) The company shall not, for any reason, unless required by the consumer, or for safety reasons, stop gas from entering the premises of any residential consumer for the period beginning on the fifteenth day of November and ending on the fifteenth day of the following April, unless:

"(1) The account of the consumer is in arrears thirty days or more; and

"(2) Where the occupant of residential premises is a tenant whose landlord is responsible for payment for the service provided by the company, the company has, five days previously, notified the occupant of its intent to discontinue service to him."

The plaintiff correctly characterizes R. C. 4933.12 (A) as permitting plaintiff to discontinue service. This permission is, however, conditioned upon subsection (C), which prohibits the plaintiff from discontinuing service from the period from November 15 through April 15. Taken this far, then, the ordinance extends the prohibition against discontinuing service for one month more than the statute. This alone does not constitute a conflict between the two. The prohibition in R. C. 4933.12 (C) is qualified, however, by a permission to discontinue service where "The account of the consumer is in arrears thirty days or more***." Section 3-A of the ordinance qualifies its prohibition where the customer's account is 30 days in arrears as of October 15. The crucial question is, *when* must the consumer's account be in arrears 30 or more days under R. C. 4933.12 (C) (1)? We find that, under R. C. 4933.12 (C) (1), the plaintiff is permitted to discontinue service where the consumer's account is in arrears 30 days or more *at any time* during the period from November 15

through April 15. Besides the plain language of R. C. 4933.12 (C) (1) itself, our conclusion is buttressed by R. C. 4933.12 (D):

"If, between the fifteenth day of November and the fifteenth day of April, the company stops the gas from entering any residential premises because of failure to pay the amount due for such gas, the company shall notify the county welfare department within twenty-four hours after taking such action, unless this notice is waived by the occupant of the premises after notification of intent to discontinue service."

This subsection plainly contemplates the discontinuance of service during the period from November 15 through April 15. Section 3-A of ordinance 133-1977, thus, prohibits what the statute permits, and is unconstitutional.

Section 3-B of the ordinance expressly prohibits the plaintiff from requiring a deposit in any amount for nonpayment or delinquency of an account, or as a precondition to the resumption of discontinued service, or the payment of any service charge or fee for the resumption of discontinued service other than the gross amount due and owing at that time from any residential customer. Section 3-B-1 of the ordinance requires the plaintiff to restore residential service discontinued for delinquency or non-payment of an account upon payment of at least fifty percent of the gross amount due at that time, plus the agreement of the customer to pay the balance not less than ninety days after the resumption of service, provided the customer pays current bills in a timely manner. R. C. 4933.17 provides:

"No person, firm or corporation engaged in the business of furnishing gas, natural gas, water or electricity to consumers shall demand or require a consumer to deposit cash as security for the payment of any bills for such commodity to be furnished:

"(A) If the proposed consumer is a freeholder who is financially responsible or a person who is able to give a reasonably safe guaranty in an amount sufficient to secure the payment of bills for sixty days' supply;

"(B) If the security is not demanded within thirty days of the initiation of service, except that this division does not apply where the account of a customer is in arrears.

"In case no such security can be furnished, a deposit not exceeding an amount sufficient to cover an estimate of the monthly average of the annual consumption by such consumer plus thirty percent may be required, upon which deposit interest at the rate of not less than three percent per annum shall be allowed and paid to the consumer, provided it remains on deposit for six consecutive months.

"Any person, firm, or corporation convicted of a violation of this section shall forfeit all right to collect or receive any sum from such consumer for gas, natural gas, water, or electricity so furnished.

"The making of any rule or requirement in conflict with this section, is forbidden, and hereby declared to be unlawful."

We believe section 3-B of the ordinance prohibits the plaintiff from requiring any security for future payments after initiation of service to the customer. We believe R. C. 4933.17 permits the plaintiff to require security after service is initiated. Section 3-B of the ordinance is, consequently, invalid. Section 3-B-1 fixes a standard for resumption of discontinued service. Security for future payments is excluded. We hold that R. C. 4933.17 applies where resumption of service is sought by the customer. It permits the plaintiff to protect itself while section 3-B-1 (and section 3-B) prohibit this protection. Section 3-B-1 conflicts with R. C. 4933.17.

We emphasize that our function is not to judge the wisdom of either state or municipal legislation. The primary power in this area is conferred by the Constitution on the General Assembly. The identification of the extent of the exercise of that power marks the limit of municipal perogative.

### Assignment of Error IV

"The court erred in finding amended Section 3-B-1 of Section 1 of ordinance No. 133-1977 an invalid exercise of the city of Akron's Police power granted by Article XVIII, Section 3 of the Ohio Constitution because no state law exists with which Section 3-B-1 could conflict."

This question is answered under the third assignment of error. We do not reach other arguments against the validity of the ordinance.

*Summary*

We overrule all four assignments of error and find city of Akron ordinance 133-1977 is in conflict with R. C. 4933.12 and R. C. 4933.17 and, therefore, is unconstitutional. The judgment is affirmed.

*Judgment affirmed.*

VICTOR and BRENNEMAN, JJ., concur.

BRENNEMAN, J., retired, was assigned to active duty under authority of Section 6 (c), Article IV, Constitution.