Lanzinger, J.,
dissenting.
{¶ 27} Because the majority interprets the reach of Section 34, Article II of the Ohio Constitution too broadly, I respectfully dissent. In plain terms, Section 34 *162 enables the General Assembly to pass laws related to hours of labor, minimum wage, and the health, safety, and general welfare of all employees. By expanding this language to include the authority to ban residency requirements by political subdivisions, the majority has opened the door for the General Assembly to use this section — which trumps all other constitutional provisions — in a conceivably limitless variety of situations to eviscerate municipal home rule. I would hold that R.C. 9.481 was not enacted pursuant to Section 34 authority, and that the Section 3, Article XVIII municipal home-rule provision of the Constitution prevails over R.C. 9.481.
I. Section 34, Article II of the Ohio Constitution Grants a Circumscribed Power
{¶ 28} In concluding that R.C. 9.481(B)(1) was validly enacted, the majority reads Section 34 of the Ohio Constitution very broadly. I believe that the Court of Appeals for Allen County correctly applied the interpretive rule of noscitur a sociis to Section 34. See Lima v. State, 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, ¶ 32-36. This rule of statutory construction “follows from the premise that ‘the coupling of words denotes an intention that they should be understood in the same general sense.’ ” Wilson v. Stark Cty. Dept. of Human Servs. (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105, quoting 2A Sutherland Statutory Construction (5 Ed.Singer Rev.1992) 183, Section 47.16.
(¶ 29} Section 34 provides that “[l]aws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power.” Looking at the words together, we see that this section gives the General Assembly authority to enact legislation relating to (1) hours of labor, (2) minimum wages, and (3) the comfort, health, safety, and general welfare of all employees. The first two clauses of Section 34 specifically concern work-related conditions: hours and wages. The rule of noscitur a sociis requires that the third clause (“the general welfare clause”) be similarly limited to work-related conditions. Because a person’s place of residence is not work-related, I would hold that Section 34 does not give the legislature the authority to enact laws eliminating municipal residency requirements.
{¶ 30} During the sessions of the 1912 Constitutional Convention, Judge Dennis Dwyer, temporary chairman of the Constitutional Convention and member of the Committee on Labor, offered a statement on the purpose of the proposal that became Section 34: “Therefore, give your employes fair living wages, good sanitary surroundings during hours of labor, protection as far as possible against danger, a fair working day. Make his life as pleasant for him as *163 you can consistent with his employment.” 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913) 1332-1333.
{¶ 31} The proposal that arose from the constitutional convention and became Section 34 was prompted by “a desire among the drafters to improve the working conditions of men, women, and children in terms of the number of hours of work each day, the minimum wage to be paid, and the environment in which tuork was being performed.” (Emphasis added.) Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 28, 539 N.E.2d 103 (“Rocky River IV”) (Wright, J., dissenting).
{¶ 32} R.C. 9.481(B)(l)’s limitation on the authority of political subdivisions to place residency requirements on their employees puts the statute outside of the scope of Section 34.[1] The statute applies only to political subdivisions — every other employer in the state is free to require that its employees reside in a specific area of the state. Because R.C. 9.481(B)(1) does not fall within the scope of the general welfare clause and applies only to a limited class of employees of the state, rather than all employees, I would hold that it was not enacted pursuant to Section 34.
II. Further Expansion of Section 34 Is Unwarranted
{¶ 33} The majority relies upon three of this court’s previous decisions to support its conclusion that R.C. 9.481(B)(1) was validly enacted under Section 34. A close reading of these cases, however, shows that reliance upon these decisions is questionable.

A. Am. Assn, of Univ. Professors

{¶ 34} The first case is distinguishable, because it did not involve a home-rule issue and dealt specifically with hours of labor rather than the general welfare clause. Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ. (1999), 87 Ohio St.3d 55, 717 N.E.2d 286. In challenging a new policy increasing teaching requirements adopted pursuant to R.C. 3345.45, which sought an increase in statewide undergraduate teaching, the association had argued that Section 34 permits the legislature to enact only those laws that benefit employees, and that laws such as R.C. 3345.45 that burden employees are unconstitutional under that section. Id. at 60, 717 N.E.2d 286. The court concluded that R.C. 3345.45 did not violate Section 34 and that R.C. 3345.45 had been enacted to address “a disturbing trend in faculty workload at public universities.” Id. at 61, 717 N.E.2d 286. Because the statute under discussion explicitly regulated hours *164 of labor, which R.C. 9.481 does not do, Am. Assn. of Univ. Professors is unhelpful in examining the residency ordinances.

B. Pension Fund

{¶ 35} The second case relied upon is a brief, three-page decision granting a writ of mandamus. State ex rel. Bd. of Trustees of Police & Firemen’s Pension Fund v. Bd. of Trustees of Police Relief & Pension Fund (1967), 12 Ohio St.2d 105, 41 O.O.2d 410, 233 N.E.2d 135 (“Pension Fund”). Faced with the near insolvency of a majority of locally administered police and firefighter pension funds, the General Assembly enacted legislation to provide for the central administration of local pension funds through a statewide pension fund modeled after the Public Employees Retirement System. Rocky River v. State Emp. Relations Bd. (1988), 39 Ohio St.3d 196, 206-207, 530 N.E.2d 1 (Moyer, C.J., dissenting). Although the Pension Fund court stated that “the firemen and police of the various localities of Ohio are employees within the scope of [Section 34],” Pension Fund, 12 Ohio St.2d at 107, 41 O.O.2d 410, 233 N.E.2d 135, the holding was based on the need for a comprehensive statutory scheme to preserve the solvency of pension funds and thus was a necessary measure for preserving the financial well-being of the state’s police officers and firefighters. The case does not support the proposition that an employee’s place of residence falls within the scope of Section 34.

C. Rocky River TV

{¶ 36} The third case relied upon by the majority is Rocky River TV, 43 Ohio St.3d 1, 539 N.E.2d 103, which resulted in the expansion of Section 34’s scope to include binding arbitration. The case has a unique procedural history.[2]
{¶ 37} In rejecting the city of Rocky River’s argument that Section 34 was intended to apply only to matters involving a minimum wage, the majority posed an all-or-nothing dichotomy: either Section 34 applied only to minimum-wage *165 matters, or the plain language of Section 34 encompassed an extremely broad array of subjects. See Rocky River IV, 43 Ohio St.3d at 13-16, 539 N.E.2d 103. Concluding in favor of an extremely broad reading, the majority in Rocky River IV relied on Pension Fund, which it found “extremely instructive,” id. at 16, 539 N.E.2d 103, despite that decision’s brevity and lack of legal analysis. The majority considered the code sections upheld in Pension Fund and remarked that these sections were “considerably more intrusive on a municipality’s power of home rule than [the statute at issue in Rocky River IV].” Id. After further stating that “the statutory scheme upheld in Pension Fund constituted a substantial infringement of local powers of self-government,” the majority concluded that the binding-arbitration statute was validly enacted under Section 34 and therefore unassailable on home-rule grounds. Id. at 17-18, 20, 539 N.E.2d 103.
{¶ 38} R.C. 4117.14(1), the statute at issue in Rocky River IV, relates to mandatory arbitration between a city and its safety forces in the event of a collective-bargaining impasse. It requires the parties to accept and implement any final settlement resulting from arbitration. The subject of the impasse was the firefighters’ salary. Rocky River IV, 43 Ohio St.3d at 1, 539 N.E.2d 103. As with salary, the primary subjects of any potential mandatory arbitration would likely involve hours, wages, or other work-related conditions. The mandatory-arbitration provision therefore arguably falls under the purview of Section 34, unlike residency requirements. But the all-or-nothing approach in Rocky River IV allowed the court to open the door for a seemingly unlimited reading of Section 34, unfettered by any other constitutional provision. If there are no limits on the subject matter the legislature may address under the rubric of “general welfare of all employes,” then it has limitless power to enact any and all laws that arguably affect employees in the state.
{¶ 39} An analysis of the level of infringement on local powers of self-government is irrelevant to the question of whether a law is validly enacted pursuant to Section 34. The Rocky River IV majority needed only to look at whether the mandatory-arbitration statute related to any of the subjects listed in Section 34. Second, by choosing to base its analysis on the level of infringement on self-government powers, the Rocky River IVmajority conflated Section 34 and home-rule analyses. Rocky River IV is therefore of little precedential value.

D. The Limits of Section 31

{¶ 40} While I agree with the majority that, considered together, Am. Assn. of Univ. Professors, Pension Fund, and Rocky River IV stand for the proposition that Section 34 does grant broad power to the General Assembly, I also agree with the Allen County Court of Appeals’ characterization of the Am. Assn, of Univ. Professors, Pension Fund, and Rocky River IV decisions as all dealing *166 with “employee economic welfare.” Lima v. State, 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, at ¶ 54. Am. Assn. of Univ. Professors specifically concerns hours of labor. Pension Fund and Rocky River LV deal specifically with wages and collective bargaining, two issues that directly touch upon work-related conditions. The broad power given under Section 34 is circumscribed and does not extend so far as to allow the General Assembly to regulate where a person might reside.
{¶ 41} The majority concludes its Section 34 analysis by stating, “R.C. 9.481 provides for the comfort and general welfare of public employees by ensuring that they will be able to choose the municipality in which they reside.” Majority opinion at ¶ 14. This statement ignores the fact that the general welfare clause of Section 34 is limited to work-related conditions and instead opens the door for the General Assembly to justify any legislation that affects employees. Under the majority’s overly broad reading of Section 34, the state would conceivably have the power to enact legislation mandating that employees be required to live in the municipality in which they are employed. I would not give the General Assembly such broad power in contravention of the plain language of Section 34, particularly when the supremacy clause within that section makes an enactment under it virtually unassailable.
{¶ 42} Because I contend that R.C. 9.481 was not enacted pursuant to Section 34, I would conduct a home-rule analysis to determine whether the municipal enactments in these cases conflict with R.C. 9.481.
III. The Municipal Residency Requirements Prevail under Home Rule
{¶ 43} In Ohio, the home-rule powers of municipalities arise from Section 3, Article XVIII of the Ohio Constitution, which provides that municipalities are authorized “to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.” To evaluate whether a municipal charter or ordinance has exceeded the municipality’s home-rule powers, we use a three-part test. A state statute takes precedence over a local ordinance when “(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute.” Mendenhall v. Akron, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17.

A. The Municipal Enactments Are a Matter of Local Self-Government

(¶ 44} If municipal charters or city ordinances that are alleged to conflict with a state statute relate solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction. Am. Financial Servs. Assn. v. Cleveland, 112 Ohio *167 St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23. The test for determining whether municipal actions constitute self-government is stated in Cleveland Elec. Illuminating Co. v. Painesville (1968), 15 Ohio St.2d 125, 44 O.O.2d 121, 239 N. E.2d 75 (“C.E.I.”): “ ‘To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly.’ ” Id. at 129, 239 N.E.2d 75, 44 O.O.2d 121, quoting Beachwood v. Cuyahoga Cty. Bd. of Elections (1958), 167 Ohio St. 369, 371, 5 O. O.2d 6, 148 N.E.2d 921. The existence of adverse extraterritorial effects does not automatically mean an ordinance is not a matter of self-government. Cleveland v. Shaker Hts. (1987), 30 Ohio St.3d 49, 30 OBR 156, 507 N.E.2d 323, paragraph two of the syllabus (“Adverse extraterritorial traffic effects on a neighboring municipality are not, standing alone, enough to overcome the presumption of the validity of a legislative enactment taken under a municipality’s home rule powers”).
{¶ 45} We have applied the C.E.I. test in holding that “[a] chartered municipality, under its home-rule authority, may enact an ordinance limiting the jurisdiction of its civil service commission to only city employees notwithstanding R.C. 124.011(A).” Ohio Assn. of Pub. School Emp., Chapter No. 171 v. Twinsburg (1988), 36 Ohio St.3d 180, 522 N.E.2d 532, at syllabus. In Twinsburg, the association had argued that an ordinance limiting the constituency to be served by its local civil service commission was a matter of statewide concern rather than local self-government. Even though the ordinance limited access to the city’s civil service commission by excluding a multi-city school district, we concluded that the ordinance related solely to the government and administration of the internal affairs of the municipality. Id. at 184, 522 N.E.2d 532. The potential extraterritorial effects of excluding a multi-city school district from the jurisdiction of a municipality’s civil service commission bear some similarities to the potential extraterritorial effects of residency requirements. But as with the ordinance in Twinsburg, the residency requirements here relate solely to the municipalities’ self-government.
{¶ 46} The state argues that it has a strong interest in ensuring open and fair access for all Ohioans to public-sector employment opportunities and in promoting free choices by its citizens for where their families should reside.[3] However, *168 these justifications do not require a conclusion that municipal-residency requirements affect the general public of the state as a whole more than they do the city residents. There is no constitutional right to be employed by a municipality, let alone to be so employed while living elsewhere. McCarthy v. Philadelphia Civ. Serv. Comm. (1976), 424 U.S. 645, 646-647, 96 S.Ct. 1154, 47 L.Ed.2d 366; Buckley v. Cincinnati (1980), 63 Ohio St.2d 42, 44,17 O.O.3d 26, 406 N.E.2d 1106. Municipalities clearly have a strong interest in the qualifications of their employees and the makeup of their work forces. Just as a private employer may seek employees who are invested members of the local community, a municipality may place a great premium on hiring individuals who exhibit a high level of commitment to that municipality.
{¶ 47} It is well settled that the terms and conditions of employment for municipal officers are purely a local matter. See, e.g., State ex rel. Frankenstein v. Hillenbrand (1919), 100 Ohio St. 339, 343, 126 N.E. 309 (qualification, duties, and manner of selection of municipal officers come within the purview of local self-government.); State ex rel. Hackley v. Edmonds (1948), 150 Ohio St. 203, 216, 37 O.O. 474, 80 N.E.2d 769 (selection, compensation, and purely local duties of municipal officers do not conflict with any general problem or concern of the state at large); State ex rel. Canada v. Phillips (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, paragraph one of the syllabus (“The appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution”).
{¶ 48} Qualifications regarding the residency of municipal employees are not aspects of the police power, but rather are matters of local self-government. Because this is not a matter of statewide concern, the ordinances should be upheld as a matter of self-governance and should prevail against R.C. 9.481 as home-rule enactments.

B. R.C. 9481 Is Not a General Law

{¶ 49} Even if residency requirements were not a matter of local self-government, R.C. 9.481 is not a general law. To qualify as a general law under the test established in Canton v. State, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus, a state statute must “(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and *169 operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.” “[SJections within a chapter will not be considered in isolation when determining whether a general law exists.” Mendenhall, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 27.
{¶ 50} Although R.C. 9.481 is part of a statewide and comprehensive legislative enactment, and no part of the state is exempt from the requirements of the statute, thus satisfying the first and second elements of the general-law test, it fails to satisfy the third and fourth elements.
{¶ 51} By merely eliminating the authority of political subdivisions to require any of their employees to reside in a specific area of the state, R.C. 9.481 fails to set forth police, sanitary, or similar regulations. R.C. 9.481 can only be said to limit the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations. Thus, it fails to satisfy the third element. The statute also does not meet the fourth element because it does not prescribe a rule of conduct upon citizens generally. R.C. 9.481 affects only those citizens who are employees of political subdivisions.
{¶ 52} In essence, R.C. 9.481 creates two distinct classes of state of Ohio employees: (1) political subdivision employees, who cannot be required to live in a specific area of the state, and (2) all other employees, who may be required to live in a specific area of the state. This clear division limits political subdivisions’ ability to establish residency requirements, but imposes no such limitations upon all other employers. Because citizens of the state receive differing treatment depending upon whether they are affiliated with political subdivisions, R.C. 9.481 fails to satisfy the fourth element of the general-law test. The ordinances may conflict with R.C. 9.481, but they do not conflict with a general law of the state.
IV. Conclusion
{¶ 53} Because the majority’s reading of Section 34 is overly expansive, granting a level of legislative power beyond the language of that section and the intentions of its drafters, I respectfully dissent. I would hold that (1) Section 34 applies only to work-related matters, (2) residency is not a work-related matter, (3) R.C. 9.481 was not validly enacted under Section 34, and (4) these municipal enactments that impose residency requirements prevail over R.C. 9.481 as a matter of home rule because they involve a matter of local self-government and because R.C. 9.481 is not a general law.
Moyer, C.J., concurs in the foregoing opinion.
*170 Anthony L. Geiger, Director of Law, for appellee city of Lima in case No. 2008-0128.
Max Rothal, Director of Law, and Deborah M. Forfia and Stephanie H. York, Assistant Directors of Law, for appellees city of Akron and Mayor Donald L. Plusquellic in case No. 2008-0418.
Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Michael L. Stokes, Assistant Solicitor, and Pearl M. Chin and Sharon A. Jennings, Assistant Attorneys General, for appellant state of Ohio.
Faulkner, Muskovitz & Phillips, L.L.P., Susannah Muskovitz, Robert M. Phillips, and Ryan J. Lemmerbrock, for appellants Fraternal Order of Police, Akron Lodge No. 7, Akron Firefighters Association, IAFF Local 330, Paul Hlynsky, and Phil Gauer in case No. 2008-0418.
Livorno & Arnett Co., L.P.A., and Henry A. Arnett, urging reversal for amicus curiae Ohio Association of Professional Fire Fighters.
Iris Torres Guglucello, Director of Law, and Anthony J. Farris, Deputy Director of Law; and The Chandra Law Firm, L.L.C., Subodh Chandra, and Jaime Bouvier, urging affirmance for amicus curiae city of Youngstown.
Green & Green, Thomas M. Green, Patrick J. Bonfield, Jane M. Lynch, and Jared A. Wagner, urging affirmance in case No. 2008-0128 for amicus curiae city of Dayton.
Paul L. Cox and Gwen Callender, urging reversal in case No. 2008-0128 for amicus curiae Fraternal Order of Police of Ohio, Inc.
Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, and Stephen J. Smith; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.
Adam Loukx, Acting Director of Law, and John Madigan, General Counsel, urging affirmance for amicus curiae city of Toledo.
Matthew J. Rossman, urging affirmance in case No. 2008-0128 for amicus curiae Urban Development Lab, Case Western University School of Law.
Dolores F. Torriero, urging affirmance in case No. 2008-0128 for amicus curiae Ohio Public Employer Labor Relations Association.
Robert J. Triozzi, Director of Law, Thomas J. Kaiser, Chief Trial Counsel, and Gary S. Singletary, Assistant Director of Law, urging affirmance in case No. 2008-0128 for amicus curiae city of Cleveland.
The Law Offices of Warner Mendenhall, Inc., Warner Mendenhall, and Jacquenette S. Corgan, urging reversal in case No. 2008-0418 for amicus curiae Jon K. Burdeshaw.

. Notably, the Legislative Service Commission expressed concern over whether the statute would survive a constitutional challenge on this point. See Legislative Service Commission Final Bill Analysis, Sub.S.B. No. 82,126th General Assembly, comment 3.

. On November 2, 1988, this court issued a four-to-three decision striking down as unconstitutional R.C. 4117.14(1), which mandated binding arbitration after impasses had been reached in certain collective-bargaining disputes between municipal safety forces and municipal employers. Rocky River v. State Emp. Relations Bd. (1988), 39 Ohio St.3d 196, 530 N.E.2d 1 (“Rocky River I”). On December 13,1988, the court denied a motion for reconsideration of the case. Rocky River v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 606, 533 N.E.2d 270 (“Rocky River II ”). The composition of the court changed in January 1989 as Justice Resnick replaced Justice Locher, and on February 10, 1989, the court announced its extraordinary decision to grant a motion for reconsideration of the previous decision denying reconsideration. Rocky River v. State Emp. Relations Bd. (1989), 41 Ohio St.3d 602, 535 N.E.2d 657 (“Rocky River III ”). Three months later, the court announced its four-to-three decision upholding the constitutionality of R.C. 4117.14(1). Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 539 N.E.2d 103 ("Rocky River IV”). See Sweet, Ohio’s Ban on Municipal Residency Requirements: Can the Employee Welfare Provision of the Ohio Constitution Protect the Ban from Home Rule Challenges? (2008), 56 Clev.St.L.Rev. 709, 715-724.

. The interpretation of Ohio law by the Legislative Service Commission conflicts with the state’s position: “Residency requirements for municipal employees most likely are a matter of local self-government, which can be overcome only when there is a state law expressing a matter of statewide *168 concern. Case law has shown Ohio courts recognize the local nature of employment matters involving residency issues. While there may be some extraterritorial impact from municipal ordinances creating residency requirements, courts may find the issue to be predominantly one of local concern, and, therefore, such a municipal ordinance would be upheld.” Legislative Service Commission Pinal Bill Analysis, Sub.S.B. No. 82,126th General Assembly, comment 1.