Thomas C. McMAHON, as he is Director of the Division of Water Pollution Control, and Francis X. BELLOTTI, Attorney General of the Commonwealth of Massachusetts

v.

AMOCO OIL COMPANY HUBBARD OIL COMPANY, INC. Ruth NOONS and William WATTS

No. 36608

Superior Court
Commonwealth of Massachusetts

June 24, 1981

481

Counsel of Record for Defendants
Charles Desmarais—Watts
Ralph H. Willard, Jr.—Amoco
Andrew T. McElaney, Jr.—Hubbard
Christopher C. Mathers—Noons
Frank A. Gaynor, Asst. A.G. counsel for plaintiff

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS

This case is before the Court on a motion to dismiss filed by Ruth Noons and on amended motions to dismiss of Amoco and Hubbard. Noons has moved to dismiss all counts of the complaint against her pursuant to Mass. R. Civ. P. 12(b)(6). Additionally, a suggestion of the death of Noons has been filed. The defendants Amoco and Hubbard have moved pursuant to Mass. R. Civ. P. 12(b)(6) to dismiss all counts of the complaint against them.

This lawsuit arises out of a leakage of gasoline from an underground storage tank in North Truro. The gasoline was stored for the use of a gasoline service station, which, the Commonwealth alleges, was owned, operated, maintained or controlled by Amoco, Hubbard, Noons or Watts during the period from 1955 when the station was built, until 1977, when the leak was detected. Complaint, Par. 13. As a result of the leakage of gasoline, the South Hollow Well Field, which supplies water to the Town of Provincetown, was rendered unfit for use. The Commonwealth seeks to recover for the costs of cleaning up the

gasoline; for damages to the environment and civil penalties.

In ruling on a motion to dismiss under rule 12(b)(6), the allegations in the complaint must be read in the light most favorable to the plaintiff. The motion will not be granted unless it is clear "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **Nader v. Citron,** 373 Mass. 96, 98 (1977). As to each count of the complaint, the Court finds that the defendants have not demonstrated that the plaintiff will be unable to prove facts which will entitle the Commonwealth to relief.

## COUNT I

Count I of the complaint is brought under G.L. c. 21, sec. 27 against all four defendants. This statute empowers the Division of Water Pollution Control to recover from those responsible the costs of cleaning up pollution, as well as damages for the harm done to natural and recreational resources. In urging the Court to dismiss this count, the defendant Amoco first asserts that the groundwaters which were allegedly contaminated in this case are not protected under the language of G.L. c. 21, sec. 27(14). The relevant language of that section refers to "any of the waters of the commonwealth or . . . any offshore waters". Amoco contends that this language refers only to surface waters and not groundwaters, at least as the statute read on December 31, 1972. On that date, Amoco alleges that it divested itself of all interest in the gas station, and thus, its liability, if any, is controlled by the statute as it then read.

Although Amoco denies that it retained any interest in the gas station after 1972,[1] the complaint alleges that Amoco, along with the other defendants, owned, controlled and maintained the service station and storage tank from 1955 to 1977. Complaint, pars. 13-15. Despite Amoco's denial of an interest in the property after 1972, on a motion to dismiss the Court takes the facts alleged in the complaint as true, and draws from them all reasonable inferences in the plaintiffs' favor. **Nader v. Citron, supra; Kipp v. Kueker,** Mass. App. Adv. Sh. (1979) 412, 417. Since the Court takes as true the Commonwealth's allegation that Amoco's legal responsibility for the gasoline leak continued until 1977, the law which the Court will apply in deciding the motion to dismiss is the law as it stood in 1977 when the leak was discovered.

As of July 27, 1973 it became abundantly clear that "waters" as used in G.L. c. 21, sec. 26 **et seq.** included groundwaters. On that date, definitional section 26A went into effect. It includes the following: ". . . 'Waters' and 'waters of the commonwealth', all waters within the jurisdiction of the commonwealth, including, without limitation, rivers, streams, lakes, ponds, springs, impoundments, estuaries, coastal waters and groundwaters." Even if Amoco were eventually to demonstrate that its liability in this matter was fixed as of December 31, 1972, before the enactment of the definitional section, the plain language of sec. 27(14) (formerly (10) ) provides no support to Amoco's contention that groundwaters were not previously within the ambit of the statute. The statute authorizes the Division of Water Pollution Control to "(u)ndertake immediately, whenever there is spillage, seepage or other discharge of oil into any of the waters of the commonwealth or into any offshore waters which may result in damage to the waters, shores or natural

---

[1] Amoco has filed with the Court a portion of the deposition of David Pippenger, taken in the related case of **Town of Provincetown et al** v. **Amoco Oil Company, et al,** Barnstable Civil No. 37620 to support Amoco's claim that it divested itself of all interest in the station in 1972. Although the filing of such an affidavit may convert the motion to dismiss in to one for summary judgment, the parties at oral argument did not view it as such, and the Court declines to treat it as such. This, of course, does not prejudice Amoco's rights to move for summary judgment.

resources'' actions necessary to contain and remove the pollution. The statute requires the division to act to protect "any" of the waters of the Commonwealth, and the Court gives that word its common, ordinary meaning. **Franki Foundation Co. v. State Tax Commission,** 361 Mass. 614, 617 (1972). "Any" is a broad and inclusive term, defined as follows in the Merriam-Webster New Collegiate Dictionary: "(O)ne, some or all indiscriminately of whatever quantity . . . one or more—used to indicate an undetermined number or amount . . . all—used to indicate a maximum or whole." This inclusiveness is further borne out by the definitions promulgated in 314 CMR 6.02(6): "**Waters of the Commonwealth.** All waters within the jurisdiction of the commonwealth including all streams, lakes, ponds, impounding reservoirs, marshes, estuaries, inlets, bays, canals, flats, tidal waters and coastal waters within the territorial limits of the commonwealth." If any term could be broader than "any", it is the virtually synonymous "all" used in the definitional section of the regulations.

If further support is needed for the proposition that groundwaters were covered by the statute even in 1972, the opening sentence of G.L. c. 21, sec. 27 provides it. "It shall be the duty and responsibility of the division to enhance the quality and value of water resources and to establish a program for the prevention, control, and abatement of water pollution." This broad legislative mandate to protect water resources would be seriously curtailed if the Court were to adopt the defendant's contention that the groundwaters of the Commonwealth were not protected by the statute. Therefore the defendant's motion to dismiss because groundwaters were not protected by the statute in 1972 must be denied.

Amoco's second argument against Count I of the complaint concerns the question of whether the Division of Water

Pollution Control has determined liability for this gasoline leak as required by G.L. c. 21, sec. 27(14). Amoco asserts that no such determination has been made, and without such a determination the Court is without subject matter jurisdiction over this action. In support of this position, Amoco cites the rescript opinion in **Bratcher v. Cerillo Bros. Petroleum,** Mass. Adv. Sh. (1979) 2398. In that case, the trial court directed a verdict for the defendant on the plaintiff's opening, where plaintiff had made no mention of any determination by the division of responsibility for the oil spill in question. This ruling was affirmed on the ground that an informal determination, which apparently had been made, did not satisfy the statute.

While the division's complaint does not allege that a formal determination of responsibility has been made, we do not read the **Bratcher** case as requiring that a formal determination be alleged in the complaint. The Commonwealth states in its Memorandum of Law in Opposition to Motions to Dismiss that a formal determination of the defendants' responsibility was made and sent to them in December 1978. Memorandum, p. 11, n. 4. Since **Bratcher** does not require anything more than what the division states that it has already done, the division's complaint will not be dismissed on this ground. The Court also notes that the **Bratcher** case involved a private plaintiff, rather than the division itself. Thus, in **Bratcher,** there was a real question as to whether the requisite determination had been made; but in this case, it seems extremely unlikely that the division would bring an action against these defendants without first having determined their responsibility.

Amoco's final argument against Count I of the complaint is that if the division has made a determination of its responsibility for the spill, such a determination was made in violation of the defendant's due process rights, since

the defendant had no notice that such a determination would be made, and no opportunity to participate in a hearing on the matter. It is undoubtedly true, as Amoco states, that it may not constitutionally be deprived of liberty or property unless it is afforded due process protections. However, at present Amoco has been deprived of nothing; it has merely become a defendant in a lawsuit. Before Amoco is deprived of anything, it will be afforded all appropriate due process protections inherent in the trial of this action. The determination which the division is required to make by G.L. c. 21, sec. 27(14) and of which Amoco complains appears merely to state the obvious—the division must first decide who caused the pollution; only then can the director of the division direct the attorney general to bring a tort action against those found responsible. Once such an action is brought, the defendants have available to them all appropriate defenses and protections of the law. Therefore the defendants have not been deprived of their due process protections, and Court I will not be dismissed on that ground.

## COUNT II

In Count II, the Commonwealth seeks to recover a civil penalty from the defendants under G.L. c. 21, sec. 42. Amoco argues that this section does not refer to oil pollution, which is regulated by sec. 27. It is obvious from the plain language of sec. 42 that it punishes the discharge of "any pollutant into waters of the Commonwealth" without a permit. While sec. 27(14) provides that the attorney general may bring an action to recover the actual costs of the pollution, sec. 42 further provides for the recovery of both civil and criminal penalties from violators, and demonstrates a legislative purpose both to protect the environment and to punish those who pollute it. Therefore Count II will not be dismissed.

## COUNT III

Count III seeks to recover a civil penalty from the defendants under G.L. c.21, sec. 43(2),[2] Amoco asserts that this section does not cover oil pollution, and that if it does, that the underground storage of gasoline is not an activity which may reasonably be expected to result in the discharge of pollutants into the waters of the Commonwealth. Section 43(2) does not concern itself primarily with oil pollution; it is more clearly addressed to the problem of sewerage. However, it cannot be said that the Commonwealth will be unable to prove any set of facts entitling it to relief under this section; that is, that the underground storage of gasoline is not an activity which may reasonably be expected to result in the discharge of pollution into the waters of the Commonwealth.

## COUNT IV

Amoco attacks Count IV, a claim of public nuisance at common law, on the theory that the Massachusetts Clean Waters Act, G.L. c. 21, sec. 27(14) is the exclusive remedy, displacing the common law. See, **Milwaukee v. Illinois**, U.S., 49LW 4445, 4449; **State v. Rockside Reclamation, Inc.**, 48 Ohio App. 2d 157, affd. 47 Ohio St. 2d 76 (1976). Even if it is not, argues Amoco, an administrative remedy has not been pursued and exhausted.

Both arguments fail. The variant federal and Ohio statutory schemes provide an inapposite analogy in light of the express legislative authorization granted the Massachusetts attorney

---

[2] That section provides: No person shall discharge pollutants into waters of the commonwealth nor construct, install, modify, operate or maintain an outlet for such discharge or any treatment works without a currently valid permit issued by the director. No person shall engage in any other activity that may reasonably be expected to result, directly or indirectly, in discharge of pollutants into waters of the commonwealth, nor construct, effect, maintain, modify or use any sewer extension or connection, without a currently valid permit issued by the director, unless exempted by regulation of the director.

general to pursue such claims even after the enactment of G.L. c.21, sec. 27 by St. 1968, c.648, sec. 2. G.L. c.12, sec. 11D added by St. 1972, c. 781, sec. 1. **Milwaukee v. Illinois** is particularly inapposite since its holding that the enactment of the Federal Water Pollution Control Act displaced earlier federal common law was compelled by a recognition that federal common law is merely a "necessary expedient" **Milwaukee v. Illinois, supra** at 49 LW 4448, and "federal courts, unlike state courts, are not general common law courts and do not possess a general power to develop and apply their own rules of decision." **Id.** at 4447. In contrast, the Superior Court of this Commonwealth is a court of general common law jurisdiction, G.L. c. 214, sec. 1; **New England Tel. & Tel. Co. v. District Attorney for the Norfolk Dist.** 374 Mass. 569, 572 (1978), bound to follow the "well settled" proposition that a statute is not to be interpreted to displace a principle of common law absent a manifest legislative intention to reach that result or a direct inconsistency between the statute and the common law. See, **Globe Newspaper Co. v. Superior Court,** Mass.Adv.Sh. (1980) 485, 489-490; **Hayon v. Coca Cola Bottling Co. of New England,** Mass.Adv.Sh. (1978) 1888, 1893-1894. There is no such inconsistency here.

Moreover, the principle of exhaustion of administrative remedies has no application here where G.L. c.21, sec. 27 provides no administrative remedy to exhaust.

## COUNT V

In Count V of the complaint, the Commonwealth alleges that the underground storage of gasoline is an abnormally dangerous activity and that it may recover on a strict liability theory. In **The Clark-Aiken Co. v. Cromwell-Wright Co. Inc.,** 367 Mass. 70 (1975), the Court adopted the test for strict liability set forth in the Restatement 2d: Torts sec.

520. Under that test, the Court looks to the activity in its surrounding circumstances to determine whether it is abnormally dangerous. One of the factors to be considered in making this determination is whether the activity, which might be safely conducted in one locale, is inappropriate to the place where it is being carried on. 367 Mass. at 89. Although there are no Massachusetts cases directly on point, at least one court has held that the underground storage of gasoline for a service station was an abnormally dangerous activity where the gasoline was stored very near to the plaintiff's domestic water supply. **Yommer v. McKenzie,** 255 Md. 220, 257 A.2d 138 (1969).

Under the test in **Clark-Aiken** each case must be evaluated in light of the surrounding circumstances to determine whether the activity is abnormally dangerous. This determination is one which should be made by a trier of fact after an evidentiary hearing. However, it cannot be said as a matter of law that the activity engaged in by the defendant cannot result in strict liability.

The attorney general has standing to bring this action, both under G.L. c.12, sec. 11D and under G.L. c.21, sec. 27(14). Therefore neither Count V nor Count VI will be dismissed.

## RUTH NOONS

Ruth Noons has moved to dismiss the action against her on the ground that she never owned the property in question. On a motion to dismiss, the allegations in the complaint must be taken as true. **Nader v. Citron,** 372 Mass. 96, 98 (1977), and her motion will not be granted.

The death of Ruth Noons has been suggested to the Court. Docket Entry No. 19. While it may be proper to dismiss the action as to Ruth Noons for that reason, the Commonwealth may move to add her executor or administrator as a party to this action, as it previously moved to add the Shawmut Bank of Boston, N.A., the executor of the will of John Noons, her

487

husband.

## ORDER

The motions to dismiss of Amoco Oil Company, Hubbard Oil Company and Ruth Noons are hereby DENIED.

By the Court,
William G. Young
Justice Superior Court

